**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 25, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

No. 13-1401

ABEL SANCHEZ-LEON, a/k/a Raul
Marez-Ortiz, a/k/a Joel Lopez,

      Defendant – Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:11-CR-00412-MSK-2)**

Martin J. Beres, Clinton Township, Michigan, appearing for Appellant.

J. Bishop Grewell, Assistant United States Attorney (John F. Walsh, United States
Attorney, with him on the brief), Office of the United States Attorney for the District of
Colorado, Denver, Colorado, appearing for Appellee.

Before **BRISCOE**, Chief Judge, **MURPHY** and **MATHESON**, Circuit Judges.

**MATHESON**, Circuit Judge.

Drug Enforcement Agency ("DEA") officers searched Mr. Sanchez-Leon's home,

where they discovered methamphetamine, firearms, and cash. A federal grand jury

charged Mr. Sanchez-Leon with violating various federal drug laws. On the first day of

trial, he changed his plea to guilty. He later moved to withdraw his guilty plea, which the district court denied. The district court sentenced him to 295 months in prison.

Mr. Sanchez-Leon appeals the district court's denial of his motion to withdraw his guilty plea as not entered knowingly or voluntarily. He also appeals his sentence as both procedurally and substantively unreasonable. He contends the district court committed procedural error by relying on abrogated law. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I.  **BACKGROUND**[1]

### A. *Factual History*

During 2011, the Sinaloa drug cartel operated a drug trafficking organization ("DTO") in the Cortez, Colorado area. Various DTO members sold methamphetamine. The DEA suspected Mr. Sanchez-Leon supplied drugs and sold methamphetamine or directed others to do so.

Between April and July 2011, a DEA confidential source allegedly purchased methamphetamine from Mr. Sanchez-Leon on five separate occasions. As a result, DEA agents secured a warrant and searched his home, discovering "a distribution quantity of methamphetamine, two firearms, . . . and in excess of $20,000 U.S. currency." ROA, Vol. III at 28. The Government bought or seized more than two kilograms of

---

[1] We provide an overview of the facts and procedural background here and add details during our analysis.

methamphetamine during their investigation of Mr. Sanchez-Leon and seven alleged co-conspirators.  [*See id.* at 28-29.]

## B. *Procedural History*

### 1. **Indictment, Trial, and Plea Deal**

In October 2011, a federal grand jury indicted Mr. Sanchez-Leon and seven co-defendants for drug possession with intent to distribute, distribution, conspiracy to possess with intent to distribute and to distribute, and aiding and abetting.  A superseding indictment added counts of possession with intent to distribute, distribution, aiding and abetting, and possession of a firearm during a drug crime.

Mr. Sanchez-Leon's trial commenced on May 6, 2013.  During the lunch break, the Government offered Mr. Sanchez-Leon a plea deal, which he accepted.  The district court scheduled a change of plea hearing for later that afternoon to allow the Government time to prepare a written plea agreement.

### 2. **Plea Agreement**

The plea agreement called for Mr. Sanchez-Leon to plead guilty to eight counts in the superseding indictment, including various counts of drug possession with intent to distribute, conspiracy, aiding and abetting, and possession of a firearm during a drug crime.[2]  In exchange, the Government promised to "stipulate with this defendant that this

---

[2] Mr. Sanchez-Leon initially agreed to waive his right to appeal his conviction and sentence, but the parties later "agreed to strike . . . appellate waiver" of those issues. ROA, Vol. III at 117 (defense counsel); *see also id.* at 118 ("[T]hat's correct." (prosecutor)).  And although Mr. Sanchez-Leon's "§ 2255 waiver still remains in full force and effect," *id.* at 118, it does not restrict Mr. Sanchez-Leon from bringing certain

defendant should be sentenced to the following sentences: 150 months as to Counts One through Six and Fourteen, and a consecutive 5 years as to Count Fourteen of the Superseding Indictment, for a total sentence of 17½ years." ROA, Vol. I at 69-70. The plea agreement also stated it was made "pursuant to Fed. R. Crim. P. 11(c)(1)(B)," which allows the court to impose a different sentence from what the parties recommended in the plea agreement. ROA, Vol. I at 70.[3] The Government also agreed to dismiss the remaining counts.

3. **Change of Plea Hearing**

At the change of plea hearing, an interpreter assisted Mr. Sanchez-Leon, who has difficulty understanding and speaking English. He pled guilty to eight counts. The district court spoke with Mr. Sanchez-Leon to ensure he understood the charges, had read the indictment, had consulted with defense counsel, and was able to use the translator to communicate. Although the court discovered the plea agreement was written in English only, defense counsel explained he had conveyed its contents to Mr. Sanchez-Leon using the interpreter.

---

collateral challenges under § 2255, such as "a claim that the defendant was denied the effective assistance of counsel," ROA, Vol. I at 70.

[3] Rule 11(c)(1)(B) allows the Government and defendant to "recommend . . . that a particular sentence or sentencing range is appropriate" as part of a plea agreement, but "such a recommendation or request does not bind the [district] court." Fed. R. Crim. P. 11(c)(1)(B).
In contrast, Rule 11(c)(1)(C) allows the Government and defendant to "agree that a specific sentence or sentencing range is the appropriate disposition of the case," which "binds the [district] court once the court accepts the plea agreement." Fed. R. Crim. P. 11(c)(1)(C).

The district court then asked detailed questions to determine whether Mr. Sanchez-Leon understood the plea agreement. ROA, Vol. III at 22-24, 37, 41-43. Based on his responses, the court concluded Mr. Sanchez-Leon's guilty plea was "voluntarily and knowingly made" and that he "understands that the penalty to be imposed . . . may exceed the agreement between the parties." *Id.* at 45. The court therefore accepted the guilty plea and scheduled a sentencing date.

4. **Letters to the Court and the Motion to Withdraw Guilty Plea**

Following the change of plea hearing, Mr. Sanchez-Leon wrote two letters complaining about his representation. The first letter was written in English to the Colorado Attorney Regulation Board and complained his attorney had pressured him to accept the plea deal. ROA, Vol. I at 101. The Attorney Regulation Board responded a few weeks later, stating it had investigated the issue and concluded no disciplinary charges against the attorney were necessary. *Id.* at 99. He then wrote a letter in Spanish to the district judge, who could not read Spanish and never obtained a translation.[4]

Mr. Sanchez-Leon then contacted his defense counsel and directed him to file a motion to withdraw his guilty plea. Counsel did so, explaining the basis for withdrawal in one paragraph:

---

[4] Mr. Sanchez-Leon's counsel obtained a translation and attached it as part of the opening brief. Aplt. Br. Attach. 1, at 1-2.
In the letter, Mr. Sanchez-Leon alleged his defense counsel deceived and pressured him to accept the plea agreement. He alleged his counsel told him that the "jury was waiting to start," Mr. Sanchez-Leon had to accept the plea deal now or he would "not be able to turn back," the district court would sentence Mr. Sanchez-Leon to "life in prison," and he had "to be intelligent." *Id.* at 2.

- 5 -

> Mr. Sanchez-Leon has informed counsel he wishes to withdraw his plea of guilty tendered to the Court on May 6, 2013, because he believes he was pressured into pleading by the undersigned counsel plus he misunderstood the terms of the written plea agreement and the Rule 11 advisement was contradictory to the terms of the written plea agreement.

*Id.* at 105.

5. **Hearing on the Motion to Withdraw the Guilty Plea**

A few weeks later, the district court heard arguments on the motion. Defense counsel represented Mr. Sanchez-Leon at the hearing. Mr. Sanchez-Leon was present and assisted by an interpreter.

Defense counsel raised whether he had a conflict of interest in continuing to represent Mr. Sanchez-Leon in light of the letter to the Colorado Attorney Regulation Board. The district court stated that although Mr. Sanchez-Leon had criticized the effectiveness of defense counsel, "that doesn't necessarily mean [defense counsel] necessarily ha[s] a conflict in representing [Mr. Sanchez-Leon]." ROA, Vol. III at 49-50.

Because the district court did not have a translation of the second letter, it asked Mr. Sanchez-Leon to explain why he should be able to withdraw the guilty plea. He stated his attorney had pressured him into signing the plea deal, the plea deal caught him by surprise, and that he would rather go back to trial. *Id.* at 52-53.

The district court heard arguments from counsel and then issued an order from the bench denying Mr. Sanchez-Leon's motion to withdraw his guilty plea. Applying the seven-factor test from *United States v. Gordon,* 4 F.3d 1567, 1572 (10th Cir. 1993), the court found three factors weighed in favor of denying the motion to withdraw the guilty plea: (1) Mr. Sanchez-Leon had not asserted any innocence, (2) his guilty plea was given

knowingly and voluntarily based on his answers to the questions posed at the change of plea hearing, and (3) defense counsel's performance was not constitutionally ineffective. ROA, Vol. III at 55-57;[5] *see United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007) (describing the factors).

6. **Sentencing**

   a. *PSR and the calculated Guidelines range*

The Presentence Investigation Report ("PSR") calculated a U.S. Sentencing Commission Guidelines range of 295 to 353 months (24.5 to 29.4 years). Neither party objected to the calculations. *See* ROA, Vol. III at 63-64.[6]

The U.S. Probation Office recommended the court vary downward to 248 months based on: Mr. Sanchez-Leon's lack of prior criminal history; his relatively short participation in the DTO; and because 248 months satisfied 18 U.S.C. § 3553(a).

   b. *First sentencing hearing*

Neither party moved for a downward variance.[7] At the sentencing hearing, Mr. Sanchez-Leon's counsel asked for a 210-month (17.5 years) sentence as agreed upon in the plea agreement. He relied on Mr. Sanchez-Leon's family, employment potential, age, and deportability as reasons to impose 17.5 years. The Government agreed with defense

---

[5] The district court did not examine the other four factors because, based on the three factors, it believed Mr. Sanchez-Leon could not establish a "fair and just reason" to withdraw the plea. ROA, Vol. III at 57.

[6] Nor does either party on appeal. *See* Aplt. Br. at 39; Aplee. Br. at 11.

[7] Mr. Sanchez-Leon could not move for a downward variance below the stipulated sentence because he agreed not to do so in his plea agreement. ROA, Vol. I at 70.

counsel and further argued 17.5 years satisfies the sentencing factors in 18 U.S.C. § 3553(a).

Unconvinced, the district court stated: "[N]obody has filed a motion for a variant sentence, and I don't understand what the basis is for a variant sentence here." ROA, Vol. III at 67. The Government responded that age and deportation weighed in favor of 17.5 years. Defense counsel responded by again discussing Mr. Sanchez-Leon's family, his age upon release, and his deportability. Defense counsel presented additional factors: Mr. Sanchez-Leon had no criminal history, some of his co-defendants received shorter sentences, and the Guidelines for methamphetamine possession and distribution are harsh. *Id.* at 69-73.

The district court said that, because the plea agreement was submitted under Federal Rule of Criminal Procedure 11(c)(1)(B), it was not compelled to sentence Mr. Sanchez-Leon to 17.5 years, nor was it convinced a downward variance was warranted. It nonetheless rescheduled the sentencing hearing so the Government could file a motion and further develop its downward variance arguments.

c. *Government's motion for downward variance*

In its motion for variance, the Government presented arguments linked to the § 3553(a) factors: Mr. Sanchez-Leon (1) was involved in the DTO for only four months; (2) had a good relationship with his parents; (3) had no prior criminal history; (4) is married and has four young children in Mexico, as well as a girlfriend and a child located in the United States; and (5) has no physical or mental health issues. The Government further argued the 17.5 year sentence (6) amounted to more than four years for each

- 8 -

month of criminal conduct and reflected the seriousness of the conduct; (7) deters future criminal activity because Mr. Sanchez-Leon would be in his 50s at the end of his prison time, and he would be deported and barred from reentry; (8) would protect the public because he would be incarcerated for many years and then deported upon release; (9) would enable him to obtain educational or vocational training while in prison; and (10) could by statute be as low as 10 years and as high as life in prison, and this sentence is squarely within that range.

d. *Second sentencing hearing*

The court held the second sentencing hearing on September 11, 2013. An interpreter and the same defense counsel assisted Mr. Sanchez-Leon.

The Government reiterated most of the arguments from its motion. Defense counsel agreed, adding that after release, Mr. Sanchez-Leon would be able to find gainful employment in Mexico and that a sentence longer than 17.5 years would not add deterrence.

The district court remained unconvinced and asked counsel to address whether Mr. Sanchez-Leon's deportability is a permissible basis for variance. The Government responded that after deportation, if Mr. Sanchez-Leon tried to return, he would face significant penalties constituting a form of "super deterrence." ROA, Vol. III at 91. Defense counsel added that the court is not bound by the Guidelines and can consider facts outside the § 3553(a) factors, such as Mr. Sanchez-Leon's alien status.

After hearing additional argument and Mr. Sanchez-Leon's brief and remorseful allocution, the district court said the parties had failed to provide a sufficient basis to grant the variance motion. It therefore recessed the hearing to conduct its own research.

After the recess, the court first considered and agreed with the PSR's Guidelines calculation. It then explained that during the recess, it had read *United States v. Castro-Rivas*, 254 F. App'x. 742 (10th Cir. 2007) (unpublished). It recognized that although *Castro-Rivas* "is not . . . binding precedent on this particular issue," it found the case "instructive for a number of reasons," including for the proposition that "a non-guideline sentence must be justified by, quote, particular characteristics of the defendant that are sufficiently uncommon.'" ROA, Vol. III at 102, 104 (quoting *Castro-Rivas*, 254 F. App'x at 751 (quoting *United States v. Garcia-Lara*, 499 F.3d 1133, 1140 (10th Cir. 2007), *judgment vacated by* 553 U.S. 1016 (2008))). The district court emphasized language from *Castro-Rivas* that "[']a sentencing court may not accord ordinary facts extraordinary weight.['] And a sentence is unreasonable where a [']court does not distinguish the defendant or his offense from the ordinary defendant upon which the [G]uideline[s] sentence is calculated.[']" *Id.* at 104-105 (quoting *Castro-Rivas*, 254 F. App'x at 752).

The district court also observed

> that the purpose . . . [of] variant sentences is to create an individualized sentence that relates to the individual characteristics of the defendant or the offense that are not adequately addressed under the guidelines. *Booker* and *Gall* and *Kimbrough* do not create a tabula rasa for either counsel or the Court in fashioning whatever sentence might subjectively be perceived as appropriate. Instead, the comparison between that which is calculated

under the guidelines must be made as to the individual circumstances of a given defendant.

*Id.* at 105.

The district court then rejected the parties' arguments for a downward variance, specifically rejecting both deportability and age as permissible bases for varying. The court said "with regard to [deportability], I take note of the Tenth Circuit's decision in *United States v. Castro-Rivas* that a variance premised upon the grouping of particular defendants is not a permissible basis for a variance; and therefore, I do not consider it." *Id.* at 107-08. It further said with regard to "the argument that Mr. Sanchez is 39 years old," that characteristic "is unique to him, but the guidelines address age in the formulation of an appropriate sentence. And therefore, there is no need to address that in the form of a variance." *Id.* at 108. Apart from discussing the need to avoid sentencing disparities, Mr. Sanchez-Leon's remorse, and his lack of prior criminal history, the court did not acknowledge the parties' remaining arguments for leniency. *See Id.* at 108.

The district court concluded "the sentence imposed here should be a guideline sentence . . . [and] there is no warranted justification for a disparity between Mr. Sanchez and other similarly situated defendants found guilty of similar conduct with similar criminal histories." *Id.* It also stated, "I find that a sentence at the bottom end of the guideline range reflects the defendant's remorse, as articulated in his allocution, and the fact that he has no prior criminal record. And that results in a sentence of 295 months of incarceration . . . ." *Id.*

Defense counsel objected, arguing the court improperly interpreted the law and either misapplied or failed to address various factors. The court replied:

> Let me be 100 percent clear. In the Tenth Circuit there are permissible and non-permissible reasons to vary. Two of the reasons offered for a variance here . . . are non-permissible. The defendant's age, and . . . the fact that the defendant is an alien and likely will be deported.
>
> The other two reasons given for a variance here are that the probation officer recommended a variance and the parties agreed on a variance. *Assuming that any or all of these were justifiable reasons to vary, permissible reasons to vary, I nevertheless would not vary because I see no warranted sentence disparity that can be justified by the individualized circumstances of the defendant or the offense conduct.* And as a consequence, I find that the guideline calculation is the sentence that is sufficient but not greater than necessary to satisfy the sentencing objectives.

*Id.* at 114 (emphasis added).

The district court then pronounced Mr. Sanchez-Leon's sentence of 295 months and concluded the hearing.

## II. **DISCUSSION**

We address (A) whether the district court erred by denying Mr. Sanchez-Leon's motion to withdraw the guilty plea; (B) whether his sentence was procedurally reasonable; and (C) whether his sentence was substantively reasonable.

### A. *Withdrawal of Guilty Plea*

Mr. Sanchez-Leon contends the district court abused its discretion when it denied his motion to withdraw the guilty plea. He argues he did not give his plea voluntarily or knowingly and his counsel was ineffective.

1. **Legal Framework and Standard of Review**

   a. *The* Gordon *factors*

   A defendant may withdraw a guilty plea before sentencing if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). We have identified seven factors to guide a court's decision on whether to grant withdrawal: "(1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources." *United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007) (quoting *United States v. Gordon,* 4 F.3d 1567, 1572 (10th Cir. 1993)). We also have "suggested an additional factor to consider: the likelihood of conviction." *United States v. Carr*, 80 F.3d 413, 421 n.5 (10th Cir. 1996) (citing *United States v. Glover*, 911 F.2d 419, 421 (10th Cir. 1990)).

   If the defendant fails to carry his or her burden on asserted innocence, validity of the plea (whether it was given knowingly and voluntarily), and ineffective assistance of counsel, *Hamilton*, 510 F.3d at 1217, the court need not address "the remaining factors . . . because these [remaining] factors speak to the potential burden on the government and the court, rather than the defendant's *reason* for withdrawal," *id*.; *see also United States v. Byrum*, 567 F.3d 1255, 1265 (10th Cir. 2009).

   b. *District court discretion and standard of review*

   Whether to permit withdrawal "always and ultimately lies within the sound discretion of the district court to determine on a case by case basis when the standard is

- 13 -

and isn't met." *United States v. Soto*, 660 F.3d 1264, 1267 (10th Cir. 2011) (quotations omitted). "Our review of a district court's denial of a motion to withdraw a guilty plea is for abuse of discretion." *Hamilton*, 510 F.3d at 1213-14. "Although a motion to withdraw a plea prior to sentencing should be freely allowed, we will not reverse a district court's decision unless the defendant can show that the court acted unjustly or unfairly." *Id.* (quotations omitted); *see also* Fed. R. Crim. P. 11(d)(2)(B).

We review legal conclusions de novo, such as whether the plea was made knowingly and voluntarily or whether counsel was ineffective. *See Hamilton*, 510 F.3d at 1213-15. We review factual findings for clear error. *See United States v. Graves*, 106 F.3d 342, 343 (10th Cir. 1997).

2. **Analysis**

Mr. Sanchez-Leon argues the district court incorrectly evaluated (a) asserted innocence; (b) validity of the plea; and (c) ineffective assistance of counsel.

a. *Asserted innocence*

After considering the motion to withdraw, the district court found Mr. Sanchez-Leon "has not asserted any innocence." ROA, Vol. III at 55. To succeed on appeal, Mr. Sanchez-Leon must demonstrate this factual finding was clearly erroneous. *See Graves*, 106 F.3d at 343.

He argues he asserted his innocence at the district level by pursuing a litigation strategy of going to trial for one-and-a-half years, rejecting multiple plea offers, and expressing regret about entering the plea deal and losing his ability to go to trial. *See* Aplt. Br at 18-19; Aplt. Reply Br. at 4. These facts may indicate he made a strategic

decision to plead guilty and then had buyer's remorse, but they do not show an assertion of innocence, much less clear error. Mr. Sanchez-Leon's appellate arguments fall short.

b. *Validity of the plea*

Mr. Sanchez-Leon claims his plea was invalid because he gave it unknowingly and involuntarily: unknowingly because he did not understand the sentence could exceed 17.5 years [Aplt. Br. at 14-16], the plea offer was written only in English, and his counsel did not fully explain the terms of the deal; [Aplt. Br. at 20-23; Aplt. Reply at 5-7] involuntarily because the plea offer came as a surprise, was a limited-time offer, and his defense counsel pressured him into signing. [Aplt. Br. at 18; Aplt. Reply at 8.]

"The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Carr*, 80 F.3d at 416 (quotations omitted). Although we review the validity of a plea de novo as a legal conclusion, "solemn declarations made in open court carry a strong presumption of verity." *Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1269 (10th Cir. 2010) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

i. <u>Knowingly</u>

Mr. Sanchez-Leon fails to overcome the presumption he entered his plea knowingly. At the change of plea hearing, Mr. Sanchez-Leon indicated he was able to communicate with the interpreter "without any difficulty." ROA, Vol. III at 20. The court verified Mr. Sanchez-Leon understood the charges, had read the indictment, and had consulted with defense counsel. *Id.* at 20-21. When the court discovered the plea agreement was written in English only, it asked defense counsel how he had conveyed

- 15 -

the contents of the plea agreement to Mr. Sanchez-Leon. Counsel responded he had used the interpreter to do so. The court then asked "Mr. Sanchez-Leon, are you satisfied that you understand the contents of [the plea agreement]?," and he said, "Yes." *Id.* at 22.

The district court then asked questions to evaluate Mr. Sanchez-Leon's understanding of the plea agreement:

> THE COURT: Do you understand that the calculation of the sentence in this plea agreement is not binding, and there is no guaranteed sentence?
>
> THE DEFENDANT: Yes, my attorney explained that to me, to some degree.
>
> THE COURT: Do you have questions about that?
>
> THE DEFENDANT: Well, yes. I signed off on all of this for 17 and a half years.
>
> THE COURT: Do you understand that there is no guaranteed sentence? I may sentence you to more than 17 and a half years.
> Mr. Sanchez-Leon, in this agreement, the Government and you have agreed on what an appropriate sentence is. But do you understand that I'm going to have to independently determine that, and I may choose a sentence that is different than 17 and a half years?
>
> THE DEFENDANT: Yes.

*Id.* at 22-23.

The court proceeded to ask about whether Mr. Sanchez-Leon had time to consider the plea agreement, understood the sentence could be more severe than what was contemplated in the plea agreement, was not pressured into signing, was satisfied with his representation, and still wished to proceed with his guilty plea. He answered each affirmatively. *Id.* at 24, 37, 41-43.

On appeal, Mr. Sanchez-Leon argues he did not understand the plea deal because it was written in English and his attorney did not explain it to him—arguments that conflict with statements he made at the plea hearing. Without more, he cannot rebut the presumption that his statements made in court are true. Even if we assume that Mr. Sanchez-Leon started with a misimpression, the district court's questions and Mr. Sanchez-Leon's affirmative responses show that Mr. Sanchez-Leon understood the consequences of his guilty plea. *See Id.* at 22-23, 37.

ii. Voluntarily

Nor can Mr. Sanchez-Leon overcome his statements acknowledging that he pled guilty voluntarily. *See* ROA, Vol. III at 41-42. The court asked if anyone pressured Mr. Sanchez-Leon or promised him something not in the plea agreement, to which he responded, "No." *Id.* He also said he had reviewed the plea deal and was satisfied with his counsel's services. *Id.* Even if we assume Mr. Sanchez-Leon was surprised, scared, or pressured—as he alleged in his letter to the district court [Aplt. Br. Attach. 1, at 1-2]— we conclude the Government's last-minute plea offer and defense counsel's alleged strong statements urging him to plea do not rise to the level of coercion. *See Carr*, 80 F.3d at 417 (holding that defendant's claim he was "hounded, browbeaten and [profanely] yelled at" by defense counsel was not enough to make a guilty plea involuntary).

\* \* \*

We conclude Mr. Sanchez-Leon's plea was given knowingly and voluntarily based on his statements made during the change of plea hearing.

- 17 -

c. *Ineffective assistance of counsel*

Mr. Sanchez-Leon argues his guilty plea was invalid because he did not receive effective assistance from counsel when he decided to accept the plea deal and during his motion to withdraw the guilty plea.

"Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal.  Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).  We address ineffective assistance claims on direct appeal only under a narrow set of circumstances, such as when the ineffective assistance claim is "fully developed in the record." *Hamilton*, 510 F.3d at 1213 (quotations omitted).

This is not one of those cases.  Although the district court held a hearing regarding Mr. Sanchez-Leon's motion to withdraw his plea agreement, the hearing did not focus on his counsel's alleged ineffective assistance and almost no evidence was submitted to that end.  Although the district court made fleeting references to counsel's performance, it did not meaningfully examine this issue.  *See* ROA, Vol. III at 49-50, 56-57.  We do not have a sufficiently developed factual record to determine ineffectiveness.  We have little more than Mr. Sanchez-Leon's allegations about what defense counsel said or did.  Thus, we

"decline to address the issue." *United States v. Samuels*, 493 F.3d 1187, 1193 (10th Cir. 2007).[8]

* * *

The district court evaluated these three *Gordon* factors and determined that Mr. Sanchez-Leon did not assert his innocence, gave his plea voluntarily and knowingly, and was effectively represented. It therefore concluded Mr. Sanchez-Leon did not establish a fair and just reason for withdrawing the guilty plea. The district court did not abuse its discretion.

## B. *Procedural Reasonableness*

Mr. Sanchez-Leon contends the district court procedurally erred because it relied on abrogated law during the sentencing hearing, failed to consider relevant factors, and treated the Guidelines as mandatory.

### 1. **Legal Framework and Standard of Review**

Our review of the reasonableness of a sentence proceeds in two steps. We first "ensure that the district court committed no significant procedural error." *Gall v. United States*, 552 U.S. 38, 51 (2007). If there is no reversible procedural error, we then "consider the substantive reasonableness of the sentence." *Id.*

---

[8] Although Mr. Sanchez-Leon waived certain collateral challenge rights under 18 U.S.C. § 2255, he did not waive a § 2255 "claim that [he] was denied the effective assistance of counsel." ROA, Vol. I at 70; *see also supra* note 2 and accompanying text.

a. *Procedural reasonableness*

Our review of procedural reasonableness "focuses on the manner in which the sentence was calculated." *United States v. Masek,* 588 F.3d 1283, 1290 (10th Cir. 2009). Procedural error includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.[9]

Regarding the district court's duty "to adequately explain the chosen sentence," *id.*, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he [or she] has considered the parties' arguments and has a reasoned basis for exercising his [or her] own legal decisionmaking authority," *Rita v. United States*, 551 U.S. 338, 356 (2007). When imposing a within-Guidelines sentence, as the court did here, it "must provide only a general statement of its reasons, and need not explicitly refer to either the

---

[9] The § 3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the recommended Guidelines range; (5) the policies underlying the Guidelines; (6) the need to avoid unwarranted sentencing disparities; and, (7) the need for restitution to any victims. *See* 18 U.S.C. § 3553(a); *Gall*, 552 U.S. at 50 n.6.

The second factor includes the need to: (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

§ 3553(a) factors or respond to every argument for leniency that it rejects in arriving at a reasonable sentence." *United States v. Lente*, 647 F.3d 1021, 1034 (10th Cir. 2011) (quotations omitted).

b. *Standard of review*

If the defendant preserved his or her procedural challenge in the trial court, we generally review the procedural reasonableness of that defendant's sentence using "the familiar abuse-of-discretion standard of review," *United States v. Halliday,* 665 F.3d 1219, 1222 (10th Cir. 2011) (quotations omitted), "under which we review de novo the district court's legal conclusions regarding the [G]uidelines and review its factual findings for clear error," *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012).[10] "An error of law is per se an abuse of discretion." *United States v. Lopez-Avila*, 665 F.3d 1216, 1219 (10th Cir. 2011) (citing *Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.")).

c. *Harmless error*

The party challenging the sentence "bears the initial burden of showing that the district court" erred. *Williams v. United States*, 503 U.S. 193, 203 (1992). If we find a procedural error, "resentencing is required only if the error was not harmless." *United States v. Cerno*, 529 F.3d 926, 939 (10th Cir. 2008). Procedural error is harmless "if the record viewed as a whole clearly indicates the district court would have imposed the

---

[10] Mr. Sanchez-Leon contends he preserved his claims below, and the Government does not object. We agree.

same sentence had it not relied on the procedural miscue(s).  In other words, remand is necessary if the sentence was imposed *as a result of* an incorrect application of the Guidelines."  *United States v. Kieffer*, 681 F.3d 1143, 1165 (10th Cir. 2012) (quotations and citation omitted).  An error is not harmless if it requires us to "speculate on whether the court would have reached [the same] determination" absent the error.  *United States v. Padilla*, 947 F.2d 893, 895 (10th Cir. 1991).  "Harmlessness must be proven by a preponderance of the evidence, and the burden of making this showing falls on the beneficiary of the error," *Cerno*, 529 F.3d at 939—in this case, the Government.  *See also United States v. Harrison*, 743 F.3d 760, 764 (10th Cir. 2014).

2.  **Analysis**

Mr. Sanchez-Leon argues the district court procedurally erred by:  (a) relying on abrogated case law; (b) failing to acknowledge and consider various relevant sentencing factors; and (c) treating the Guidelines as mandatory.

a.  *Abrogated case law*

Mr. Sanchez-Leon contends the district court procedurally erred when it relied on *United States v. Castro-Rivas*, 254 F. App'x 742 (10th Cir. 2007) (unpublished), to conclude it could "not accord ordinary facts extraordinary weight" when considering a downward variance.  *See* ROA, Vol. III at 104-05.

i.  Error to rely on *Castro-Rivas*

During the second sentencing hearing, the district court focused on Mr. Sanchez-Leon's deportability, asking the parties to "help [the court] understand why an alien should receive a different sentence than someone who is a U.S. citizen."  ROA, Vol. III at

- 22 -

90. Unpersuaded by their answers, the court conducted its own research and found *Castro-Rivas*.

The *Castro-Rivas* decision reversed a sentencing court's decision to vary downward based on a defendant's deportability. *Castro-Rivas* reasoned that when a district court decides whether to grant a variance, it may not "accord ordinary facts extraordinary weight." 254 F. App'x at 751-52. As a result, *Castro-Rivas* concluded it was error to vary downward based on the defendant's deportability because his alienage was "not unique or personal," but instead reflected an "attribute[] common to all defendants." *Id.* at 752 (quotations omitted).

The district court relied on *Castro-Rivas* for the proposition that "a non-guideline sentence must be justified by 'particular characteristics of the defendant that are sufficiently *uncommon.*'" ROA, Vol. III at 104 (emphasis added) (quoting *Castro-Rivas*, 254 F. App'x at 751-52). The court said Mr. Sanchez-Leon must "'distinguish [himself] or his offense from the ordinary defendant upon which the guideline sentence is calculated.'" *Id.* at 105 (quoting *Castro-Rivas*, 254 F. App'x at 752). The court then declined to consider Mr. Sanchez-Leon's deportability as a factor for a downward variance because "a variance premised upon a grouping of particular defendants is not a permissible basis for a variance." *Id.* at 108 (citing *Castro-Rivas*, 254 F. App'x 742).

We conclude the district court procedurally erred when it relied on *Castro-Rivas* to reject deportability as a permissible factor. The approach to variance described in *Castro-Rivas* was no longer valid law at the time of sentencing. *Castro-Rivas* quoted from and relied upon *United States v. Garcia-Lara*, 499 F.3d 1133 (10th Cir. 2007),

- 23 -

*judgment vacated*, 553 U.S. 1016 (2008). But the Supreme Court vacated *Garcia-Lara* in light of its decision in *Gall v. United States*, 552 U.S. 38 (2007). In *Gall*, the Court rejected the "appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." 552 U.S. at 47. We later relied on *Gall* to state that courts are "allowed to contextually evaluate each § 3553(a) factor, including those facts the relevant guideline(s) already purport to take into account, even if the facts of the case are less than extraordinary." *See United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008). The district court's avoidance of deportability due to *Castro-Rivas* does not square with *Gall* and *Smart*. By ruling that it could not consider the "ordinary" factor of deportability in its consideration of the motion for variance, the district court imposed a greater burden on Mr. Sanchez-Leon than the law required.[11]

---

[11] Although we conclude Mr. Sanchez-Leon has met his burden to show the district court erred in relying on *Castro-Rivas* to exclude deportability as a variance consideration, we do not think he has shown the court similarly erred as to other sentencing factors he urged the court to consider, such as age. *See* Aplt. Br. at 31, 34; *see also Williams*, 503 U.S. at 203 (defendant "bears the initial burden" of showing error).

The district court rejected age as a permissible factor for variance. ROA, Vol. III at 114 ("Two of the reasons offered for a variance here . . . are non-permissible. The defendant's age and . . . the fact the defendant is an alien and likely will be deported."), But the court did not mention *Castro-Rivas* when it did so. *See id.* at 108, 114. Instead, it explained Mr. Sanchez-Leon's age of 39 "is unique to him, but the guidelines address age in the formulation of an appropriate sentence. And therefore, there is no need to address that in the form of a variance." *Id.* at 108.

Following an incorrect legal standard to decide a sentence is "per se an abuse of discretion," *Lopez-Avila*, 665 F.3d at 1219. The district court therefore procedurally erred.[12]

### ii. Harmless error

The Government argues that even if the district court committed procedural error by relying on abrogated law, any such error was harmless. *See United States v. Cerno*, 529 F.3d 926, 939 (10th Cir. 2008). We agree.

Although the district court improperly relied on *Castro-Rivas* in refusing to consider deportability, we conclude the error was harmless. After hearing the parties' variance arguments at the first sentencing hearing, which included references to deportability,[13] the district court asked why a "guideline sentence is [not] appropriate

---

[12] Our circuit has not addressed whether a sentencing court may consider deportation for a variance in light of *Gall* and *Smart*, which allow a court to consider varying based on "less than extraordinary" characteristics. *See Smart*, 518 F.3d at 808.

Other circuits have stated that district courts may consider deportability as a variance factor. *See United States v. Thavaraja*, 740 F.3d 253, 263 (2d Cir. 2014) ("[A] district court may take into account the uncertainties presented by the prospect of removal proceedings and the impact deportation will have on the defendant and his family."); *United States v. Flores-Olague*, 717 F.3d 526, 535 (7th Cir. 2013) ("A sentencing court is well within its prerogatives and responsibilities in discussing a defendant's status as a deportable alien."); *United States v. Petrus*, 588 F.3d 347, 356 (6th Cir. 2009) (noting that "immigration status" could lead the court to either vary downward or upward, depending on the facts of the case, and stating "either approach is within the discretion of the sentencing court"); *United States v. Morales-Uribe*, 470 F.3d 1282, 1287 (8th Cir. 2006) ("Arguably, the need to protect the public from a defendant may be reduced in a case where, upon immediate release from incarceration, the Government will deport the defendant.").

[13] Defense counsel argued (1) a 17.5-year sentence was appropriate because even this sentence would be higher than his co-defendants' sentences, some of whom were

- 25 -

here when one of the factors is the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct?" ROA, Vol. III at 68.

After considering further arguments,[14] the district court remained unconvinced, reiterating at the second sentencing hearing "the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct." *Id.* at 89. The court mentioned specifically that Mr. Sanchez-Leon's deportation "places him in a position where there would be a sentence disparity between him and other similarly situated defendants with similar records found guilty of similar conduct." *Id.* at 90.

Although the district court wrongly relied on *Castro-Rivas* in ruling out Mr. Sanchez's deportability as a factor to justify a variant sentence, the court not only said it would have given the same low-end-of-the-Guidelines sentence taking all individual

---

more culpable; (2) Mr. Sanchez has five young children, (3) a greater sentence would make post-prison employment less likely; (4) he will be deported immediately upon release from prison; (5) Mr. Sanchez has no criminal history; (6) he is older than the average defendant; and (7) the Guidelines for methamphetamine offenses are severe; ROA, Vol. III at 65-66, 69-73. The prosecution agreed, arguing that, based on Mr. Sanchez-Leon's "deportation, his age at this time, [and] his age upon release from incarceration," a 17.5-year sentence is appropriate. *Id.* at 67-68.

[14] Before the second sentencing hearing, the Government, at the district court's suggestion, formally moved for a downward variant sentence of 17.5 years. ROA, Vol. I at 111-20. At the hearing, the prosecutor reiterated most of the arguments raised in the motion, including that (1) Mr. Sanchez-Leon was 39 years old; (2) he had no prior criminal history; (3) he would be deported immediately after serving his sentence; (4) would be liable for aggravated illegal reentry if he returned; and (5) 17.5 years is 2½ years over the statutory mandatory minimum. ROA Vol. III at 85-87. Defense counsel agreed with these points. *Id.* at 87; *see also id.* at 109-13. The Government added that deportation and the risk of an aggravated illegal reentry prosecution provides a "super deterrence" and that Mr. Sanchez-Leon's "age upon release" would make him less likely to cause "more trouble." *Id.* at 91.

characteristics into account, it stated more than once its concern that relying on factors such as deportability to vary would run afoul of the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct. *Id.* at 68, 89-90, 108, 114, 146.

The combination of the court's statements that (1) it would not have granted a variance and would have granted the same Guidelines sentence even if it were appropriate to consider deportability, and (2) it was concerned that reliance on deportability would conflict with the need to avoid unwarranted sentencing disparities, is sufficient for us to conclude that the district court's reliance on the unpublished and abrogated *Castro-Rivas* decision was error but harmless.

The district court summed this up at the end of the second sentencing hearing: "Assuming that any or all of these were justifiable reasons to vary, permissible reasons to vary, I nevertheless would not vary because I see no warranted sentence disparity that can be justified by the individualized circumstances of the defendant or the offense conduct." *Id.* at 114.

Unlike cases in which we held procedural error was not cured despite the sentencing court's stating it would give the same sentence irrespective of the error, *see United States v. Peña-Hermosillo*, 522 F.3d 1108, 1117-18 (10th Cir. 2008) (concluding error not cured where district court failed to explain the reasoning behind alternative sentence of same length), the record supports the district court's reasoning. Both parties presented arguments based on deportability and other characteristics to support a downward variance, and the court thought variance for deportability could cause

unwarranted disparity. *See* ROA, Vol. III at 85-97, 105-108 (receiving arguments about and discussing the various reasons asserted by the Government and Mr. Sanchez-Leon for why downward variance was appropriate).

We are not "in the zone of speculation and conjecture" in determining the preponderance of the evidence shows that any "error did not affect the court's selection of the sentence imposed." *United States v. Conlan*, 500 F.3d 1167, 1170 (10th Cir. 2007) (quotations omitted). "A remand would needlessly burden the district court and counsel with another sentencing proceeding, which we know would produce the same result." *United States v. Serrano-Dominguez*, 406 F.3d 1221, 1224 (10th Cir. 2005).

We conclude the court's procedural error was harmless.

    b. *Consideration of all factors*

Mr. Sanchez-Leon also argues the district court procedurally erred by failing to acknowledge his other arguments for a variance. *See supra* notes 13-14. We do not find procedural error here.

For sentences that result in a within-Guidelines sentence, as here, the district court needs only to provide "a general statement of its reasons, and need not explicitly refer to either the § 3553(a) factors or respond to every argument for leniency that it rejects in arriving at a reasonable sentence." *Lente*, 647 F.3d at 1034 (quotations omitted). Thus, the district court is generally not required to articulate its reasoning for each of the § 3553(a) factors, nor does it have to respond to every argument for leniency. *Id.*; *see also United States v. Rodriguez-Quintanilla*, 442 F.3d 1254, 1258 (10th Cir. 2006) (noting the court does not have to address each of the factors individually or recite any

"magic words" to show us it has fulfilled its responsibility to consider all of the § 3553(a) categories (quotations omitted)).

The district court correctly noted factors it should consider under § 3553(a). ROA, Vol. III at 99. The Government and defense counsel presented the factors to justify a variance, and the court asked clarifying questions. It referred to sentencing disparities, criminal history, and Mr. Sanchez-Leon's remorse. *Id.* at 108. The district court did not specifically address each argument, but it was not required to do so. *See Lente*, 647 F.3d at 1034.

We cannot say the district court procedurally erred by failing to acknowledge some of Mr. Sanchez-Leon's arguments for leniency.

c. *Treatment of the Guidelines as mandatory*

Mr. Sanchez-Leon argues the court erred when it "essentially adopted a presumption that the Guidelines were reasonable and challenged [the parties] to rebut the presumption." Aplt. Br. at 39. We disagree.

Presuming a Guidelines recommendation is reasonable during sentencing effectively treats the Guidelines as mandatory, which is procedural error. *See United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007). But the district court did not do that here. Instead, it correctly noted the Guidelines sentencing range is just one of many factors it must consider under § 3553. ROA, Vol. III at 71; *see id.* at 89 (stating the Guidelines calculation "is one factor in determining the appropriate sentence"). Indeed, the district court examined other factors, such as sentencing disparities, Mr. Sanchez-Leon's remorse, and his lack of prior criminal history. *See, e.g.*, *id.* at 108. It also

- 29 -

examined—and rejected—age and deportability.  As a result, we cannot conclude the district court treated the Guidelines as mandatory.

*  *  *

For the foregoing reasons, we conclude the district court procedurally erred by relying on abrogated law, but that error was harmless.  We further conclude the sentence was otherwise procedurally reasonable.

C. <em>Substantive Reasonableness</em>

Mr. Sanchez-Leon argues his sentence—295 months in prison followed by 5 years of supervised release—is substantively unreasonable because the district court "gave undue weight to one factor over another."  Aplt. Br. at 41.

## 1.  **Legal Framework and Standard of Review**

If we determine the district court did not commit reversible procedural error, we then consider whether the sentence is substantively reasonable.  *United States v. Lente*, 647 F.3d 1021, 1030 (10th Cir. 2011).

As we have previously explained, "[a] substantive challenge concerns the reasonableness of the sentence's length and focuses on the district court's consideration of the § 3553(a) factors and the sufficiency of the justifications used to support the sentence."  *Id.*; *see Gall v. United States*, 552 U.S. 38, 51 (2007).  The district court need not afford equal weight to each of the factors.  *See United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008).  Courts should aim to impose a sentence "'sufficient, but not greater than necessary, to comply with the purposes' of criminal punishment."  *United States v. Martinez-Barragan*, 545 F.3d 894, 904 (10th Cir. 2008) (quoting 18 U.S.C. § 3553(a)).

As with procedural reasonableness, we "review the substantive reasonableness of a sentence for abuse of discretion." *United States v. Chavez*, 723 F.3d 1226, 1233 (10th Cir. 2013). We find an abuse of discretion only if the district court was "arbitrary, capricious, whimsical, or manifestly unreasonable" when it weighed "the permissible § 3553(a) factors in light of the totality of the circumstances." *United States v. Sayad*, 589 F.3d 1110, 1116, 1118 (10th Cir. 2009) (quotations omitted). Said differently, "[a] sentencing decision is substantively unreasonable if it exceeds the bounds of permissible choice, given the facts and the applicable law." *Chavez*, 723 F.3d at 1233 (quotations and alterations omitted); *see also United States v. Reyes-Alfonso*, 653 F.3d 1137, 1145 (10th Cir. 2011) ("In many cases there will be a range of possible outcomes the facts and law at issue can fairly support; rather than pick and choose among them ourselves, we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." (quotations and alterations omitted)).

Because Mr. Sanchez-Leon's sentence was within his Guidelines range of 295 to 353 months, we must reject his claim of substantive unreasonableness unless he can overcome the presumption that the sentence was reasonable. *See United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006) (per curiam); *see also Rita v. United States*, 551 U.S. 338, 347-56 (2007); *United States v. Verdin-Garcia*, 516 F.3d 884, 898 (10th Cir. 2008). He has failed to do so.

2. **Analysis**

Mr. Sanchez-Leon does not contend the sentence is outside the properly calculated Guidelines range; we therefore presume it is reasonable. *See Kristl*, 437 F.3d at 1054.

Mr. Sanchez-Leon therefore "bears the burden of rebutting this presumption in light of the § 3553(a) factors." *Chavez*, 723 F.3d at 1233.

Mr. Sanchez-Leon argues the district court unduly relied on the Guidelines recommendation and failed to consider a number of factors, such as the co-defendants' sentences, the harshness of the Guidelines range, and whether the sentence would reflect the nature of the crime, promote respect for the law, deter similar conduct, and protect the public.[15] He concludes the district court committed substantive error because it was "overly concerned with the mechanical application of the advisory Guidelines . . . to the exclusion of the other § 3553(a) factors that Mr. Sanchez-Leon presented for consideration." Aplt. Br. at 45. But he fails to explain why that "exceeds the bounds of permissible choice." *Chavez*, 723 F.3d at 1233 (alterations omitted). As we have noted before, the district court need not afford equal weight to each of the factors. *See Smart*, 518 F.3d at 808.

Moreover, "[t]he record supports the district court's sentencing determination as substantively reasonable in light of the charged crimes . . . ." *See United States v. Parker*,

_____

[15] Some of Mr. Sanchez-Leon's arguments blur the line between procedural and substantive reasonableness. We have clarified the difference between substantive and procedural reasonableness: procedural error is the "fail[ure] . . . to consider all the relevant factors," whereas substantive error is when the district court "impos[es] a sentence that does not fairly reflect those factors." *United States v. Lopez-Macias*, 661 F.3d 485, 489 n.3 (10th Cir. 2011) (quotations omitted).

Mr. Sanchez-Leon's substantive unreasonableness arguments include claims that the district court "failed to consider," "ignored," or "selectively disregard[ed] some § 3553(a) factors" such as his age, family circumstances, and likelihood of deportation. Aplt. Br. at 44-45. Those are claims of procedural error, which we examined in our procedural reasonableness analysis above.

553 F.3d 1309, 1323 (10th Cir. 2009). Mr. Sanchez-Leon was identified "as the major source of supply" of high purity methamphetamine. ROA, Vol. I at 114. He sold drugs or directed others to do so on multiple occasions. *See id.* And when officers searched his home, they found methamphetamine (a distributable quantity), firearms, and cash. *Id.*

Mr. Sanchez-Leon has not carried his "hefty" burden to overcome the presumption of reasonableness. *See Verdin-Garcia*, 516 F.3d at 898.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Mr. Sanchez-Leon's motion to withdraw his guilty plea and affirm his sentence as both procedurally and substantively reasonable.