**UNITED STATES COURT OF APPEALS**

**April 10, 2019**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRYCE D. DRAPER,

    Defendant - Appellant.

No. 18-3187
(D.C. No. 2:15-CR-20035-CM-1)
(D. Kansas)

_____

**ORDER AND JUDGMENT***

_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.

_____

Bryce D. Draper appeals from the district court's revocation of his supervised release, arguing that he was improperly sentenced under the United States Sentencing Commission Guidelines. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

---

    * After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

## I. BACKGROUND

In 2007, Mr. Draper was convicted of one count of unlawfully possessing a firearm after being convicted of a felony, a violation of 18 U.S.C. § 922(g)(1). He was sentenced to 30 months' imprisonment followed by a three-year term of supervised release. One condition of his supervised release provided, "You must not commit another federal, state, or local crime," and other conditions required drug testing and forbade him from unlawfully possessing or using a controlled substance. ROA at 121–22.

Mr. Draper was released from prison on May 23, 2017, and began his term of supervised release. On August 1, 2017, Mr. Draper was arrested and charged with driving under the influence of alcohol. On September 15, 2017, Mr. Draper tested positive for cocaine. He failed to submit to a scheduled drug test on October 2 and absconded from supervised release for approximately five months. On March 12, 2018, when the U.S. Marshals Fugitive Task Force arrested Mr. Draper, he volunteered that he would probably test positive for methamphetamine. After submitting to an onsite drug test, Mr. Draper tested positive for methamphetamine, cocaine, and marijuana. Mr. Draper's probation officer recommended that Mr. Draper's supervised release be revoked because he had violated several of the conditions of supervised release by using cocaine and methamphetamine. The probation officer issued a report classifying both violations as Grade B violations, noting that Mr. Draper's possession of these substances would have been "a felony

2

punishable by a term of imprisonment exceeding one year under Kansas state law." *Id.* at 19, 22.

After a hearing on August 20, 2018, the district court found that Mr. Draper had committed multiple supervised-release violations, based on Mr. Draper's stipulation admitting cocaine use and his earlier admission of methamphetamine use to his probation officer. The Government argued that each violation was a Grade B violation under U.S.S.G. § 7B1.1(a)(2), because possession of cocaine and methamphetamine constituted "felon[ies] punishable by a term of imprisonment exceeding one year under Kansas state law."[1] *Id.* at 21. Mr. Draper countered that they were Grade C violations because under federal law, a first-time conviction for possession of a controlled substance is a misdemeanor punishable by a term of imprisonment of not more than one year. *See* 21 U.S.C. § 802(6); 21 U.S.C. § 844(a).

The district court rejected Mr. Draper's argument, classifying both violations as Grade B violations. Based on that classification, the court calculated the Guidelines sentencing range as 21 to 24 months and sentenced Mr. Draper to 18 months' imprisonment, followed by one year of supervised release. Mr. Draper timely appealed.

---

[1] The Sentencing Guidelines create three grades of supervised-release violations. U.S.S.G. § 7B1.1(a). A Grade B violation encompasses "conduct constituting any . . . federal, state or local offense punishable by a term of imprisonment exceeding one year," while a Grade C violation includes "conduct constituting . . . a federal, state, or local offense punishable by a term of imprisonment of one year or less." *Id.*

3

## II. DISCUSSION

On appeal, Mr. Draper appeals his sentence on two grounds: first, he challenges the procedural reasonableness of his sentence, arguing the district court erred by applying Kansas state law, rather than federal law, to determine whether Mr. Draper's cocaine and methamphetamine violations were Grade B or Grade C violations under the Guidelines. Second, Mr. Draper argues the district court violated the Supremacy Clause of the United States Constitution and the doctrine of federal preemption by applying Kansas state law in computing the sentence. We reject both arguments and affirm the district court.

### A. *Reasonableness of District Court's Sentence*

"When reviewing a sentencing challenge, we evaluate sentences imposed by the district court for reasonableness." *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007). Our analysis "has both substanti[ve] and procedural components." *Id.* (quotation marks omitted). "Substantive reasonableness involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *Id.* On the other hand, procedural reasonableness "focuses on the manner in which the sentence was calculated." *United States v. Masek*, 588 F.3d 1283, 1290 (10th Cir. 2009). Although he does not use these terms, we understand Mr. Draper to be challenging solely the procedural reasonableness of his sentence since his argument questions whether his sentence was properly calculated. *See* Opening Br. at 7 ("[I]t was unreasonable . . . to apply Kansas state law rather than federal law in deciding that the Appellant's use of controlled

4

substances . . . were Grade B rather than Grade C violations under the Sentencing Guidelines."). Therefore, we focus our review on the procedural reasonableness of Mr. Draper's sentence.[2]

### 1. Standard of Review

"[W]e generally review the procedural reasonableness of th[e] defendant's sentence using the familiar abuse-of-discretion standard of review, under which we review de novo the district court's legal conclusions regarding the Guidelines and review its factual findings for clear error." *United States v. Sanchez-Leon*, 764 F.3d 1248, 1262 (10th Cir. 2014) (internal citations, quotation marks, and alteration omitted). "An error of law is per se an abuse of discretion." *Id.* (quotation marks omitted).

### 2. Analysis

Mr. Draper argues the district court abused its discretion by applying Kansas state law, rather than federal law, in finding that his cocaine and methamphetamine use were Grade B violations. The district court found that a plain reading of U.S.S.G. § 7B1.1(a)(2) of the Guidelines does not require a court to consider only federal law when the conduct in question violates both federal and state law.

---

[2] To be sure, we have suggested elsewhere that "the line between procedural and substantive reasonableness is blurred." *United States v. Barnes*, 890 F.3d 910, 917 (10th Cir. 2018). Thus, in some cases, it might not be proper to consider one issue completely independently of the other. But here, where Mr. Draper challenges only the process by which the district court determined his below-guidelines sentence, we need not separately analyze whether that sentence was substantively reasonable.

We interpret the Sentencing Guidelines "according to accepted rules of statutory construction." *United States v. Nacchio*, 573 F.3d 1062, 1066 (10th Cir. 2009). It is the "cardinal principle of statutory construction that [i]f the language is clear and unambiguous, the plain meaning of the statute controls." *United States v. Husted*, 545 F.3d 1240, 1243 (10th Cir. 2008) (quotation marks omitted).

The Guidelines create three grades of supervised-release violations. *See* U.S.S.G. § 7B1.1(a)(1)–(3). Relevant here, U.S.S.G. § 7B1.1(a)(2) states that a Grade B violation encompasses "conduct constituting any . . . federal, state, or local offense punishable by a term of imprisonment exceeding one year." By contrast, Grade C violations include "conduct constituting . . . a federal, state, or local offense punishable by a term of imprisonment of one year or less." U.S.S.G. § 7B1.1(a)(3). Thus, the Guidelines plainly authorize a district court to consider not only federal law, but also state and local laws, in classifying a supervised-release violation.

Furthermore, nothing in the plain text of the Guidelines requires the sentencing court to choose federal law over state law when the offender's conduct violates both. In fact, the Guidelines provide that when a violation of supervised-release conditions "constitutes more than one offense, the grade of violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b). Apparently contemplating situations where, as here, a violation constitutes an offense of both federal and state law, this provision expressly authorizes a court to classify the violation based on the most serious state offense.

6

Mr. Draper relies on *United States v. Robles* for the proposition that "[w]hile simple possession of cocaine is a federal crime, punishable by a term of imprisonment of less than one year if the defendant has no prior relevant drug convictions, it is punishable by imprisonment of a year or more if the defendant has one or more prior relevant drug convictions." Opening Br. at 6–7 (quoting *United States v. Robles*, 447 F. App'x 892, 895 (10th Cir. 2012) (unpublished)). But *Robles* does nothing to inform the issue at hand. In *Robles*, the defendant was prosecuted under 21 U.S.C. § 844 for cocaine possession, punishable by a term of imprisonment of less than one year if the defendant has no prior conviction, or more than one year if the defendant has prior relevant convictions. *Robles*, 447 F. App'x at 895. The issue there was not whether state or federal law should apply for sentencing under the Guidelines, but rather, whether U.S.S.G. § 7B1.1 distinguishes between "prior convictions" and "instant convictions" for purposes of triggering § 844's recidivist penalties. *Id.* at 896. Because the defendant in *Robles* was guilty of only a federal law violation, the sentencing court necessarily referenced only federal law to calculate the Guideline range under U.S.S.G. § 7B1.1(a)(2). Nothing in *Robles* speaks to whether U.S.S.G. § 7B1.1(a)(2) authorizes a sentencing court to consider state law offenses. Thus, Mr. Draper's reliance on *Robles* is misplaced.

In sum, the district court did not abuse its discretion by considering Kansas law in determining Mr. Draper's violations constituted a Grade B violation. Based on the plain language of the Guidelines, the district court's determination was reasonable and not an abuse of discretion.

## B. *Supremacy Clause*

For the first time on appeal, Mr. Draper argues the Supremacy Clause forbids the use of state law in determining sentencing under U.S.S.G. § 7B1.1(a)(2). We reject this argument.

### 1. Standard of Review

"As a general rule, when a defendant fails to preserve an objection to the procedural reasonableness of his sentence, we review only for plain error."[3] *United States v. Martinez-Barragan*, 545 F.3d 894, 899 (10th Cir. 2008). "We find plain error only when there is (1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007). Defendant bears the burden to prove each of these elements. *Id.*

### 2. Analysis

The Supremacy Clause provides that the laws of the United States "shall be the supreme Law of the Land . . ., any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Pursuant to the Supremacy Clause, we have identified three ways in which federal law can "preempt" state law:

---

[3] Mr. Draper alleges in his reply brief that this issue was preserved below and should be reviewed for abuse of discretion rather than plain error. Notwithstanding the fact that he never mentioned preemption or the Supremacy Clause, he points to his statement that "[i]f there was a conflict of law, this court would apply federal law in a situation like this." ROA at 82; Reply Br. at 4. This passing reference is insufficient to preserve his argument for appeal. *See United States v. A.B.*, 529 F.3d 1275, 1279 n.4 (10th Cir. 2008) ("We have repeatedly declined to allow parties to assert for the first time on appeal legal theories not raised before the district court, even when they fall under the same general rubric as an argument presented to the district court.").

express preemption, field preemption, and conflict preemption. *See Cerveny v.*

*Aventis, Inc.*, 855 F.3d 1091, 1097–98 (10th Cir. 2017).

> The traditional preemption analysis looks to whether federal law expressly or implicitly preempts state law. Absent express preemptive language in the statute, Congress may implicitly preempt state law "where the scheme of federal regulation is so pervasive as to make reasonable [the] inference that Congress left no room for the States to supplement it" ("field preemption"), or "where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" ("conflict preemption").

*Pueblo of Pojoaque v. New Mexico*, 863 F.3d 1226, 1235 (10th Cir. 2017) (citing

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)). None of these

theories of preemption supports Mr. Draper's argument.[4]

Express preemption applies only where "Congress explicitly indicates its

intent to supplant state law." *Cook v. Rockwell Int'l. Corp.*, 790 F.3d 1088, 1092

(10th Cir. 2015). Nothing in U.S.S.G. § 7B1.1 explicitly indicates an intent to

supplant state law. Indeed, the provision does just the opposite, authorizing the

sentencing court to consider a "federal, state, *or* local offense." U.S.S.G.

§ 7B1.1(a)(2) (emphasis added). As the language of the Guidelines contains no

expressly preemptive language stating that federal law should control, express

preemption does not apply here.

---

[4] Although Mr. Draper references conflict preemption in his reply brief, his opening brief refers generally to "preemption" and "the Supremacy Clause." For purposes of our analysis, we consider all three theories.

9

Field preemption applies where a federal scheme is "so pervasive as to make reasonable [the] inference that Congress left no room for the States to supplant it." *Pueblo of Pojoaque*, 863 F.3d at 1235 (quoting *Gade*, 505 U.S. at 98). Although the Guidelines likely create a scheme so pervasive as to supplant state law with respect to federal sentencing procedures generally, Mr. Draper has not shown that the Guidelines prevent a district court judge from considering state law provisions when classifying a defendant's supervised release violation where expressly permitted by a specific Guideline.

Implied preemption requires a showing that compliance with both federal and state law is a "physical impossibility," or that state law is an obstacle to accomplishment and execution of Congressional objectives. *See id.* Mr. Draper makes no such showing here. Mr. Draper argues in his reply brief that conflict preemption applies because compliance with both federal law, 21 U.S.C. § 844, and state law, K.S.A. §§ 65-4107, 21-5701, & 21-5706, would be a "physical impossibility" given that federal law would result in a Grade C violation whereas state law would result in a Grade B violation. But the plain language of the Guidelines, granting the sentencing court discretion to consider "federal, state *or* local offense[s]," U.S.S.G. § 7B1.1(a)(2) (emphasis added), does not require simultaneous compliance with conflicting federal and state law, so no "physical impossibility" exists. Moreover, as we have already observed, the Guidelines resolve any potential conflict between state or federal offenses by providing that when a violation of supervised-release conditions "constitutes more than one offense, the

10

grade of violation is determined by the violation having the most serious grade."

U.S.S.G. § 7B1.1(b). Therefore, consideration of state law does not pose an obstacle

to the accomplishment and execution of Congressional objectives. *See Pueblo of*

*Pojoaque*, 863 F.3d at 1235.

Because Mr. Draper has shown no error, we need not address the remaining

prongs of the plain-error test. Mr. Draper has failed to show that the district court

plainly erred in applying Kansas state law, rather than federal law, in finding that Mr.

Draper's cocaine and methamphetamine violations were Grade B violations. We

therefore deny relief on this claim.

## III.    CONCLUSION

We AFFIRM the sentence imposed by the district court.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

11