**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 30, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DONALD ALFRED BUSCH,

    Defendant - Appellant.

No. 22-2161
(D.C. No. 5:20-CR-01486-KG-2)
(D. N.M.)

_____

**ORDER AND JUDGMENT***
_____

Before **TYMKOVICH**, **EBEL**, and **ROSSMAN**, Circuit Judges.
_____

Donald Alfred Busch was convicted after a jury trial in the District of New Mexico on charges of conspiracy, carjacking resulting in death, carrying a firearm while committing a crime of violence, and being a felon in possession of a firearm or ammunition. The district court imposed a sentence of 480 months in prison. Mr. Busch now appeals, advancing challenges to his conviction and sentence. As we explain, many of Mr. Busch's appellate challenges were not preserved in the district court or properly developed on

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

appeal, and the arguments appropriately before us are unavailing. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I[1]

## A

On the evening of May 27, 2019, Mr. Busch and his ex-girlfriend Tristyn Carlo were arguing over text message. Carlo had recently started dating Justin Swenson. Mr. Busch said he would "come down" to Swenson's house and show her and Swenson "how dumb he could be." RIII.874. A little after midnight, Mr. Busch went to Swenson's house and saw Carlo's car parked outside. He thought Carlo was "in there banging [Swenson]." RI.153.

Mr. Busch drove a few miles away to a property where his friend, Stetson Barnes, lived in a trailer. There, he asked Barnes and two others—Jehra Hedgecock and Tyson Terrell—to help him steal a dirt bike[2] from Swenson. Hedgecock drove the group to Swenson's house in her truck. Mr. Busch,

---

[1] We derive these facts from Volumes I and III of the record, with reference to the narrative summaries in the Opening and Answer Briefs.

[2] The district court and parties use both "motorcycle" and "dirt bike" to describe the vehicle. Because the distinction does not affect our analysis, and because Mr. Busch proposes we call it a "dirt bike," we will use the characterization he suggests.

Barnes, and Hedgecock each carried a handgun.[3] When they arrived, Hedgecock got out of her truck and knocked on Swenson's front door, but no one answered. Mr. Busch and Terrell walked to the garage and looked at Swenson's dirt bikes, while Barnes stood near the tailgate of the pickup truck. Mr. Busch selected a dirt bike, brought it outside the garage, and tried to start it.

Swenson then came to the front door with a gun in his hand. Mr. Busch, Barnes, and Hedgecock pulled out their guns and pointed them at Swenson. Mr. Busch shouted at Swenson to get back in the house. Swenson responded, "Chill the fuck out," and went back inside. Mr. Busch again tried to start the dirt bike, but he was unsuccessful. He then pushed the dirt bike down the driveway and off Swenson's property. Barnes, Terrell, and Hedgecock got back inside the truck, with Hedgecock driving, Terrell in the passenger seat, and Barnes in the backseat.

As Hedgecock pulled away from the property, Barnes and Swenson exchanged gunfire. In a few seconds, Barnes fired twelve shots into the house, and Swenson fired four shots at the pickup truck. One of Barnes's shots ultimately penetrated the house, killing Swenson.

---

[3] Mr. Busch disputes he carried a gun that evening. As we will soon discuss, we conclude the evidence was sufficient to find beyond a reasonable doubt Mr. Busch possessed a firearm during the offense.

3

Mr. Busch was arrested about a week later. Mr. Busch's firearm was never recovered. A federal grand jury indicted Mr. Busch for committing a carjacking resulting in death under 18 U.S.C. § 2119(3); engaging in a conspiracy to commit carjacking under 18 U.S.C. §§ 2119(3) and 371; carrying a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A)(2); and being a felon in possession of a firearm or ammunition under 18 U.S.C. § 922(g)(1). Barnes, Terrell, and Hedgecock were charged as co-defendants with Mr. Busch in the same indictment.[4]

**B**

Mr. Busch and co-defendants Barnes and Terrell proceeded to jury trial.[5] We briefly highlight aspects of the trial proceedings relevant to the appellate issues and will discuss these facts in more detail in our analysis.

---

[4] Like Mr. Busch, all three were charged with conspiracy to commit carjacking under §§ 2119 and 371. The government also charged Barnes and Hedgecock with carjacking resulting in death under § 2119(3) and carrying a firearm during and in relation to a crime of violence under § 924(c)(1)(A)(ii). Barnes was additionally charged with causing a death by using his firearm in relation to a crime of violence, in violation of § 924(j)(1), and being a felon in possession of a firearm or ammunition, in violation of § 922(g)(1). The government charged Terrell with simple carjacking under § 2119(1).

[5] Hedgecock pleaded guilty before trial and testified against Mr. Busch, Barnes, and Terrell at trial. Barnes was convicted on all counts. His direct appeal remains pending. *See United States* v. *Barnes*, No. 22-2147. As to Terrell, the district court declared a mistrial because of a hung jury.

At the pretrial conference, Mr. Busch's counsel mentioned for the first time his desire to call a toxicology expert to testify about Swenson's alleged methamphetamine intoxication on the night of the offense. The expert-designation deadline had expired, but the district court agreed to "reconsider a deadline if there's good cause, if [Mr. Busch] [did] have an expert," since there was "some time before trial." RIII.2142. Mr. Busch never proposed a toxicology expert.

Before trial, each defendant and the government filed a set of proposed jury instructions. The court then drafted a preliminary set of jury instructions, including one on the elements of carjacking under § 2119(3), which said

> To find a Defendant . . . guilty of this crime, you must be convinced that the United States has proved each of the following elements beyond a reasonable doubt: First, the Defendant took a Yamaha motorcycle from the presence of another person; Second, the Defendant did so by means of force and violence, or intimidation; Third, the motor vehicle had been transported, shipped, and received in interstate or foreign commerce; Fourth, the Defendant intended to cause death or serious bodily harm; and Fifth, someone died as a result of the crime.

ECF No. 280 at 10.[6]

---

[6] The documents to which we refer by docket number were not included in the record on appeal. We have accessed these publicly filed documents on the district court docket and take judicial notice of them. *See In re Syngenta II*, 95 F.4th 1251, 1259 n.4 (10th Cir. 2024). (noting we may "take judicial notice of documents appearing on the district court's docket and on our own docket").

At the jury instruction conference, the government asked the district court to modify the instruction by separating the first four elements (simple carjacking) from the final element (the death-results element). The government also proposed placing the death-results element in a separate interrogatory. Mr. Busch's counsel opposed the government's proposal. "I would object to doing that," defense counsel said. RIII.1532. "I think it's totally proper the way the Court's done it." The district court ultimately gave a single instruction with all five elements for carjacking resulting in death, in the form endorsed by Mr. Busch.

Co-defendant Barnes requested a self-defense instruction on the charges of carjacking under § 2119(3) and carrying a firearm in violation of § 924(c)(1)(A)(2).[7] The district court ultimately concluded self-defense was available only as to the § 924(c)(1)(A)(2) offense against Barnes—and not as to the carjacking charge. On the record before us, Mr. Busch did not participate in the pre-trial litigation on the self-defense instruction.

---

[7] The issue of whether to give a self-defense instruction relating to the carjacking and § 924(c) charges first arose when the government filed a motion *in limine* arguing self-defense was not available in this context. RI.288–89. Barnes opposed that motion, insisting he was entitled to argue self-defense. *See* RI.287–88 (describing Barnes's arguments). Mr. Busch did not respond to the government's motion or otherwise request such an instruction on his behalf. The district court denied the government's motion, ruling a self-defense instruction for the charges against Barnes could be warranted "depending on the admissible evidence presented to the jury." RI.289.

The jury heard testimony over the course of eight days. The government presented evidence from fifteen witnesses, including the officers who investigated the incident, Carlo, Hedgecock, and two firearms and ammunition experts. Barnes testified in his defense; the other defendants did not.

When the government rested, Mr. Busch moved for a judgment of acquittal on all charges. The court denied the motion. The jury convicted Mr. Busch as charged in the indictment. Mr. Busch was sentenced to concurrent prison terms of 60 months on Count 1 (conspiracy), 396 months on Count 2 (carjacking), and 120 months on Count 7 (felon in possession), and a consecutive term of 84 months on Count 4 (using a firearm in a crime of violence), for a total of 480 months.

This timely appeal followed.

## II

Mr. Busch urges reversal of his conviction and sentence. His opening brief raises seven issues—some of which overlap. We understand his appellate challenges as follows.

*First*, Mr. Busch argues the evidence was insufficient to support a conviction. He challenges the sufficiency of the evidence on his carjacking

conviction under § 2119(3).[8] He contends a dirt bike is not a "motor vehicle" within the meaning of the statute. And he insists the evidence was insufficient to show he intended to harm Swenson. He also appeals his conspiracy conviction based on insufficient evidence of his specific intent to commit the underlying carjacking offense and the interdependence among the coconspirators. Mr. Busch likewise challenges his firearms-related convictions (for being a felon in possession and using a firearm in a crime of violence), contending the government failed to prove beyond a reasonable doubt he carried a gun.

*Second*, Mr. Busch challenges aspects of the jury instructions. He contends the jury was erroneously instructed on the carjacking offense because the death-results element was not set out in its own interrogatory. And he insists he was entitled to a jury instruction on self-defense to the carjacking charge.

*Third*, Mr. Busch contends the district court erred by excluding his proposed toxicology expert.

---

[8] Because the carjacking offense was a predicate to the convictions for conspiracy and using a firearm in a crime of violence, Mr. Busch's sufficiency argument on this issue implicates all three convictions.

*Finally*, Mr. Busch contends his sentence is procedurally unreasonable because the district court erroneously imposed a two-level sentencing enhancement for obstruction of justice under U.S.S.G. § 3C1.1.

As we explain, Mr. Busch's appellate claims are unpreserved, underdeveloped on appeal, or unavailing on the merits. We discuss each in turn and affirm the district court.

## III

### A

Mr. Busch argues there was insufficient evidence to sustain a conviction for carjacking resulting in death under 18 U.S.C. § 2119. As a general rule, we review sufficiency-of-the-evidence challenges to criminal jury verdicts *de novo*. *United States* v. *Cornelius*, 696 F.3d 1307, 1316 (10th Cir. 2012). Sufficient evidence exists to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Matthews* v. *Workman*, 577 F.3d 1175, 1183 (10th Cir. 2009) (quoting *Jackson* v. *Virginia*, 443 U.S. 307, 319 (1979)).

Here, the statute of conviction provides criminal penalties for "[w]hoever, with the intent to cause death or serious bodily harm, takes a motor vehicle . . . from the person or presence of another by force and violence or by intimidation." 18 U.S.C. § 2119. Mr. Busch asserts § 2119 "was . . . directed at

*cars*" and not dirt bikes—the vehicle he took from Swenson. Opening Br. at 35. He further contends the evidence was insufficient to prove either of the charges for which the carjacking offense is a predicate, namely the conspiracy count and the § 924(c) count. *See* Opening Br. at 37–38.

This challenge was forfeited, as the government persuasively argues. Federal Rule of Criminal Procedure 29 provides "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Rule 29 thus allows defendants to challenge the sufficiency of the evidence both before the case is submitted to a jury and after the jury has returned a verdict. *See id.* 29(a), (c).

The Rule 29 context creates unique implications for preservation. "When a defendant challenges in district court the sufficiency of the evidence on specific grounds, all grounds not specified in the motion are waived." *United States* v. *Maynard*, 984 F.3d 948, 961 (10th Cir. 2020) (quoting *United States* v. *Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (internal quotation omitted)). This principle does not require heightened "specificity of grounds . . . in a Rule 29 motion." *United States* v. *Murphy*, 100 F.4th 1184, 1193 (10th Cir. 2024) (internal quotation omitted). Rather, it focuses on the appellate consequences of heightened specificity in the Rule 29

10

motion: "where a Rule 29 motion is made on specific grounds, all grounds not specified are waived." *Id.*; *see also* 2A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 469 (4th ed. 2024) ("[I]f the defendant has asserted specific grounds in the trial court as the basis for a motion for acquittal, he or she cannot assert other grounds on appeal.").

We generally consider sufficiency arguments waived "when [a defendant] make[s] specific challenges in the district court in support of a Rule 29 motion and then later raise[s] *entirely separate* claims before us." *Murphy*, 100 F.4th at 1195 (emphasis added) (discussing *Maynard*, 984 F.3d at 948, which held a Rule 29 motion expressly addressing only one count resulted in waiver of sufficiency challenges to his convictions on other counts). But when the arguments on appeal are not about "entirely separate" claims but are merely new arguments about the same convictions, we view those arguments as forfeited and review for plain error. *See, e.g.*, *Goode*, 483 F.3d at 681 (reviewing the defendant's sufficiency challenge to a felon-in-possession conviction for plain error because he raised a challenge to the interstate-commerce element on appeal after challenging only the possession element in his Rule 29 motion); *see also United States* v. *Kimler*, 335 F.3d 1132, 1141 (10th Cir. 2003) (reviewing the defendant's sufficiency challenge to a child pornography conviction for plain error because he raised

a new argument on appeal after challenging only the interstate commerce element in his Rule 29 motion).

Mr. Busch moved for a judgment of acquittal on the carjacking count on two grounds: (1) the vehicle was not taken from Swenson's presence, and (2) although Mr. Busch committed an "actual taking of the motorcycle," the "taking of the motor vehicle had stopped before the shooting occurred." RIII.1373–74. Neither ground includes the specific argument now before us—that a dirt bike is not a "motor vehicle" within the meaning of § 2119. The argument on appeal, however, is about the *same claim* as raised in the Rule 29 motion. Under these circumstances, we may review the forfeited issue—but only for plain error. *See Goode*, 483 F.3d at 681.

Mr. Busch attempts to resist the conclusion about the appropriate standard of review. He says the argument advanced on appeal was preserved and in support, purports to quote trial counsel as "not[ing] there had been 'no taking of a motor vehicle' by Appellant." Opening Br. at 34 (purporting to quote RIII.1372).[9] The record simply does not support Mr. Busch's position. The transcript confirms trial counsel only argued "the taking of the motor vehicle had stopped before the shooting occurred."

---

[9] The citation to page 1372 of the third volume of the record is incorrect. The language most closely resembling the purported quotation appears on pages 1373–74.

RIII.1374. To the extent Mr. Busch suggests this portion of the transcript, correctly construed, shows he affirmatively argued a dirt bike is not a motor vehicle, we are unpersuaded.

We conclude Mr. Busch forfeited the argument that a dirt bike is not a motor vehicle within the meaning of § 2119. Mr. Busch did not argue for plain error in his Opening Brief. After the government pointed out this omission, Mr. Busch, in his reply brief, sought plain-error review. We permit "a plain error argument to be raised for the first time in a reply brief." *United States* v. *Zander*, 794 F.3d 1220, 1232 n.5 (10th Cir. 2015); *see also Goode*, 483 F.3d at 681 (holding defendant forfeited a sufficiency argument by failing to adequately specify it in a Rule 29 motion and reviewing for plain error); *Kimler*, 335 F.3d at 1141 (same). We do so here.

**B**

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States* v. *Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (quoting *United States* v. *Burbage*, 365 F.3d 1174, 1180 (10th Cir. 2004)). "The defendant has 'the burden of establishing entitlement to relief for plain error.'" *Greer* v. *United States*, 593 U.S. 503, 508 (2021) (quoting *United States* v. *Dominguez Benitez*, 542 U.S. 74, 82 (2004)).

Mr. Busch's appellate challenge to the district court's interpretation of 18 U.S.C. § 2119(3) falters on the first two prongs. "[A]n error is plain if it is 'clear or obvious under current, well-settled law,' meaning 'either the Supreme Court or this court has addressed the issue.'" *United States* v. *Flechs*, 98 F.4th 1235, 1254 (10th Cir. 2024) (alteration adopted) (quoting *United States* v. *Brooks*, 736 F.3d 921, 930 (10th Cir. 2013)). In the context of a district court's interpretation of a statute, an appellant "must demonstrate either that this court or the Supreme Court has resolved these matters in his favor, or that the language of the relevant statute[] is clearly and obviously limited to the interpretation [he] advances." *United States* v. *Harbin*, 56 F.4th 843, 845 (10th Cir. 2022) (internal alterations omitted) (quoting *United States* v. *Fagatele*, 944 F.3d 1230, 1239 (10th Cir. 2019)), *cert. denied*, 144 S. Ct. 106 (2023).

The term "motor vehicle" is not defined in § 2119. And Mr. Busch has not identified (nor have we found) any authority suggesting this court or the Supreme Court has construed the term in § 2119. According to Mr. Busch, "federal courts . . . universally hold that the term is limited to the language contained in the Motor Vehicle Act of 1984: 'a vehicle driven or drawn by mechanical powers and manufactured primarily for use on public streets, roads and highways.'" Reply Br. At 3–4. But Mr. Busch has marshalled no

14

precedential authority to support this assertion.[10] Nor has Mr. Busch carried his burden to show "the language of the relevant statute[] is clearly and obviously limited to the interpretation [he] advances." *Id.* (quoting *Fagatele*, 944 F.3d at 1239.

When interpreting a statute, we "begin[] with its text." *See Abbott* v. *Abbott*, 560 U.S. 1, 10 (2010) (quoting *Medellin* v. *Texas*, 552 U.S. 491, 506 (2008)). Recall, "motor vehicle" is not defined in § 2119 or elsewhere in Chapter 103 of Title 18. We "give undefined terms their ordinary meanings, considering both the specific context in which the word is used and the broader context of the statute as a whole." *Hooper* v. *City of Tulsa*, 71 F.4th 1270, 1282 (10th Cir. 2023) (quoting *In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018)). "[I]f Congress does not define [a] statutory term, its common and ordinary usage may be obtained by reference to a dictionary." *United States* v. *Barajas-Chavez*, 162 F.3d 1285, 1288 (10th Cir. 1999) (citing *United States* v. *Roberts,* 88 F.3d

---

[10] For example, Mr. Busch points us to a bankruptcy case from the Western District of Missouri. Reply Br. at 4 (citing *In re Race*, 159 B.R. 857 (Bankr. W.D. Mo. 1993), *rev'd sub nom. Willison* v. *Race*, 192 B.R. 949 (W.D. Mo. 1995)). There, the bankruptcy court interpreted a Bankruptcy Code provision excepting from discharge a debt incurred for death or personal injury caused by debtor's unlawful operation of a motor vehicle while intoxicated. *See In re Race*, 159 B.R. at 859. But Mr. Busch cannot—by identifying one case from a bankruptcy court in another circuit defining the term "motor vehicle" as used in another section of another legal code— "demonstrate . . . that this court or the Supreme Court has resolved" the interpretation of § 2119 "in his favor." *See Harbin*, 56 F.4th at 845.

872, 877 (10th Cir. 1996) and using, in part, Black's Law Dictionary to define "furtherance"); *see also In re Hamilton Creek Metro. Dist.*, 143 F.3d 1381, 1385 (10th Cir. 1998) (noting that "the ordinary meaning attached to the word . . . may be found by aid of commonly accepted dictionary definitions" and using Black's Law Dictionary to define "due"); *Marcantel* v. *Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1223 (10th Cir. 2021) (using Black's Law Dictionary to define "defect").

The government contends the ordinary meaning of "motor vehicle" is "[a] wheeled conveyance that does not run on rails and is self-propelled, esp. one powered by an internal-combustion engine, a battery or fuel cell, or a combination of these." Answer Br. at 14 (citing *Motor Vehicle*, Black's Law Dictionary (11th ed. 2019)[11]). This definition would include dirt bikes, since these generally are wheeled conveyances that do not run on rails and are powered by internal combustion engines.[12] Mr. Busch urges the panel to adopt

---

[11] Mr. Busch does not challenge the government's reliance on this dictionary to define the term.

[12] Mr. Busch's argument on this issue appears limited to challenging whether dirt bikes generally fall within the purview of § 2119—not whether the evidence was sufficient that this *particular* dirt bike had the requisite features. In other words, Mr. Busch does not contend the government's definition was not satisfied on this record. And there is no indication from the record that the dirt bike stolen from Swenson deviated in any relevant respect from the definition the government proposes. For example, though Mr. Busch may have had doubts about whether the dirt bike would run, *see*

a narrower construction of "motor vehicle" by either (1) reading the scope of the statute as limited by its title, the "Anti Car Theft Act," and legislative history referring to cars and trucks; or (2) importing the definition of "motor vehicle" from another section, 18 U.S.C. § 511.[13] These arguments are unavailing.

The title of an act "may furnish some aid in showing what was in the mind of the legislature," but it "cannot control [the statute's] words." *Holy Trinity Church* v. *United States*, 143 U.S. 457, 462 (1892). Neither the context in which "motor vehicle" is used in § 2119 nor the "broader context of the statute as a whole" aligns with Mr. Busch's reading. *Hooper*, 71 F.4th at 1282 (quoting *In re Taylor*, 899 F.3d at 1129). There is no indication in § 2119, for example, Congress meant to import a specialized definition from another section of another title, 49 U.S.C. § 32101. Mr. Busch has offered no authority supporting that proposition, and we are aware of none.

---

RIII.1666, there was no testimony or argument suggesting the vehicle was not equipped with an internal combustion engine.

[13] Section 511(c) provides that "'motor vehicle' has the meaning given that term in section 32101 of title 49." 18 U.S.C. § 511(c)(2). In turn, 49 U.S.C. § 32101 (located in Title 49, Part C, which imposes certain requirements on vehicles sold to consumers), defines "motor vehicle" as "a vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads, and highways, but does not include a vehicle operated only on a rail line." 49 U.S.C. § 32101(7).

Mr. Busch relies on the House Report—describing this statute's purpose as "to prevent and deter auto theft"—as evidence of a legislative intent narrowly focused on "automobile theft" rather than theft of other vehicles. *See* Opening Br. at 35 (citing 1999 House Report No. 102-851, 1992 U.S.S.C.A.N. 2829, at 2829). But that stated purpose evinces no clear intent to *exclude* other kinds of vehicles from the statute's ambit. The legislative history relied on by Mr. Busch does not suggest giving "motor vehicle" its ordinary meaning will "produce a result demonstrably at odds with the intentions of [§ 2119's] drafters." *United States* v. *Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." (quoting *Griffin* v. *Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982))).

The district court did not plainly err by refusing to construe the term "motor vehicles" in a manner not compelled by the statutory text or applicable caselaw. Mr. Busch has offered no contrary availing argument. Having failed to satisfy his burden of proving plain error on the first two prongs, we need not address whether he satisfies the remaining elements. *United States* v. *Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012) ("Because all four [plain error] requirements must be met, the failure of any one will foreclose relief and the others need not be addressed."). We thus find his argument for reversal of his

18

convictions for carjacking, conspiracy, and using a firearm in a crime of violence on this ground to be unavailing.

## IV

### A

Mr. Busch next challenges the sufficiency of the evidence on the specific intent element for carjacking. *See* Opening Br. at 43–44. This argument appears to have been adequately raised during the motion for a judgment of acquittal. *See* RIII.1373 (arguing the evidence did not "establish[] that they [the codefendants] had any intent to go commit a carjacking" and that "there was no intent to hurt Mr. Swenson"). The government does not contend otherwise. We review *de novo. Cornelius*, 696 F.3d at 1316.

Section 2119 requires the taking of the motor vehicle to have been committed with "the intent to cause death or serious bodily injury." 18 U.S.C. § 2119. The requisite intent is a *conditional intent*—meaning the government need not prove the defendant "actually attempted to harm or kill the driver." *Holloway* v. *United States*, 526 U.S. 1, 7, 11 (1999). The government could satisfy the intent requirement of § 2119 by showing "the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the [vehicle]." *Id.*; *see also United States* v. *Malone*, 222 F.3d 1286, 1291 (10th Cir. 2000) (analyzing a sufficiency challenge on the intent element of § 2119 under

*Holloway* by asking "whether the words and actions of the defendants sufficiently demonstrate a conditional intent to cause serious bodily harm").

The *mens rea* element of § 2119 refers to the defendant's state of mind "at the moment the defendant demanded or took control over" the motor vehicle. *See Holloway*, 526 U.S. at 8. The totality of the circumstances during the same "episode" may be probative of the defendant's intent. *See Malone*, 222 F.3d at 1291 (clarifying "it is necessary to look at the totality of the circumstances" to discern whether a defendant had the conditional intent to cause serious bodily harm); *United States* v. *Pena*, 550 F. App'x 563, 565–66 (10th Cir. 2013)[14] (interpreting *Malone* to permit consideration of any facts from the same "episode" as "sufficiently contemporaneous" to be probative). For example, *Malone* held a jury could reasonably infer the defendant's actions before the car was taken —"tying up [the car owner's] family, holding a gun to her head, and shoving her to the ground several times"—sufficiently established the requisite conditional intent for carjacking, even though at the precise moment of the taking the defendants made no threats. 222 F.3d at 1292.

We have said brandishing or otherwise using a gun to take a motor vehicle may support an inference of conditional intent. *See United States* v.

___

[14] This unpublished authority is not binding on the panel, but we find it persuasive. *See* 10th Cir. R. 32.1.

*Vallejos*, 421 F.3d 1119, 1124 (10th Cir. 2005) (describing with approval other courts' rulings that "when a carjacker brandishes a firearm and orders a driver out of his car, it is reasonable for the driver, and for the jury, to infer that the carjacker is willing to use that firearm if the driver refuses to give up the car"). But intimidation alone is not enough.[15] *See Malone*, 222 F.3d at 1291–92 (relying in part on a defendant forcing the car owner "at gunpoint, out [of her house] to her car" in finding sufficient evidence of conditional intent). We have also considered "whether there was physical violence or touching and/or direct or implied verbal threats to kill or harm" as relevant to the inquiry into conditional intent. *United States* v. *Folse*, 854 F. App'x 276, 289 (10th Cir. 2021) (citing *Malone*, 222 F.3d at 1291–92).[16]

## B

Mr. Busch urges reversal, arguing the evidence of conditional intent was not sufficient beyond a reasonable doubt. According to Mr. Busch, each

---

[15] The intent element for carjacking is distinct from the intimidation element, though evidence of intimidation might be relevant to proving intent. Threats of force or actual use of force tend to show conditional intent to kill or seriously harm. But an "empty threat" or mere "intimidating bluff" standing alone is not sufficient to establish that intent. *Malone*, 222 F.3d at 1291. For example, "if a defendant ordered a carjacking victim to do as he was told or he would be shot, while carrying an unloaded weapon, the intimidation element [for carjacking] would be satisfied although the intent element might not." *Id*.

[16] *Folse*, though not precedential, persuasively shows how we have applied *Malone* in analogous circumstances. *See* 10th Cir. R. 32.1.

21

defendant (including Mr. Busch) "responded to [Swenson's] conduct in a measured way that did not indicate an intent to kill or cause [Swenson] serious bodily injury." Opening Br. at 43–44. Mr. Busch maintains the evidence showed only that he, Hedgecock, and Barnes "acted in a way designed to deescalate" the situation created by Swenson's "drug-addled, paranoid impulses brought on by his methamphetamine addiction"; none made verbal threats "to attack or shoot" Swenson; and "certainly [Swenson] was never physically touched." Opening Br. at 44. Mr. Busch also argues the co-defendants were not "brandish[ing]" their weapons, *cf. Vallejos*, 421 F.3d at 1124, because they did not "shake or wa[ve] a weapon menacingly." Opening Br. at 44.

We discern no reversible error. On *de novo* review, the record amply supports the jury's finding that Mr. Busch possessed the requisite conditional intent required by § 2119. The evidence showed Mr. Busch harbored animosity toward Swenson, recruited others to show up armed to Swenson's home at night to take a dirt bike, drew and pointed a gun at Swenson when he emerged from the home, and ordered him to go back inside. For example, the jury heard evidence from which it could reasonably conclude

- Mr. Busch had a motive to harm Swenson (Swenson was dating Carlo, Mr. Busch's ex-girlfriend), RI.150–54; RIII.871–73;

- Mr. Busch openly expressed hostility to Swenson and agreed with the others to "fuck him up" and "jack him up in front of his new lady" if he came outside, RI.146, 155;[17]

- Mr. Busch and his friends arrived at Swenson's house armed, in the middle of the night, RI.130–32; RIII.1366–68;[18]

- Mr. Busch, Barnes, and Hedgecock all drew their weapons and pointed them at Swenson when he came outside, RIII.1237–38; and

- Mr. Busch yelled an order at Swenson—"get back in the house, pussy"—while pointing a gun at him, RIII.1238.

We have found sufficient evidence of conditional intent in similar circumstances, particularly when the defendant uses an imminent threat of force in a carjacking. *See, e.g., United States* v. *Hernandez*, No. 22-2083, 2023 WL 4073726, at *1, *5 (10th Cir. June 20, 2023) (pressing gun into owner's back while he drove was sufficient to establish conditional intent). And we have acknowledged, evidence of an implied threat to harm the victim in the event of non-compliance with the defendant's demands supports a finding of conditional intent. *See Malone*, 222 F.3d at 1291–92.[19]

---

[17] The government seems to suggest Mr. Busch said these words, but Mr. Busch correctly points out law enforcement actually made these statements. *See* Reply Br. at 11–12 (discussing the words "jack," "punk" and "fuck him up"). A full review of the record confirms Mr. Busch and Hedgecock expressly affirmed these sentiments during the interview. *See* RI.146, RI.155, RIII.1304–05.

[18] We soon reject Mr. Busch's challenge to the sufficiency of the evidence showing he carried a firearm that night.

[19] The government urges affirmance, relying on *Vallejos* for the proposition that "[t]he use of a firearm in a carjacking sufficiently establishes

Accordingly, we conclude the evidence was sufficient on the intent element of § 2119.

## V

Mr. Busch next contends the evidence was insufficient to convict him of conspiracy to commit carjacking resulting in death. We review *de novo* to determine whether the record, viewed in the light most favorable to the verdict, would permit any rational trier of fact to have convicted on the conspiracy count. *See Workman*, 577 F.3d at 1183.[20]

---

the conditional intent required by § 2119." Answer Br. at 18 (citing 421 F.3d at 1123–24). The government points to language in *Vallejos* stating "the presence of a gun establishes that the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." 421 F.3d at 1124 (quoting *Holloway*, 526 U.S. at 3). Importantly, the few cases invoking this language from *Vallejos* have affirmed findings of conditional intent based on more than the presence of a gun. *See Pena*, 550 F. App'x at 566 (sufficient evidence of conditional intent based on "[t]he presence of the loaded guns, Pena's threat to shoot Arthur, and his other aggressive behavior"); *Hernandez*, 2023 WL 4073726, at *5 (sufficient evidence of conditional intent based on "[t]he open presence of Mr. Hernandez's gun throughout this episode, and the evidence that Mr. Hernandez pointed the gun at Mr. Jackson's back while he drove"); *see also Malone*, 222 F.3d at 1291 (sufficient evidence of conditional intent to harm the victim based on the facts that defendants tied up her family, held a gun to her head, and pushed her to the ground several times). To affirm, we need not endorse the government's broad framing of *Vallejos*—that the use of a firearm, without more, would conclusively establish the conditional intent element.

[20] Mr. Busch raised the issue at least in part in the motion for a judgment of acquittal. *See* RIII.1373 (arguing for a judgment of acquittal on the conspiracy count based on insufficient evidence of specific intent to commit the underlying offense—carjacking). And the government does not contest preservation. Because we readily conclude the evidence is sufficient

Under the general conspiracy statute, 18 U.S.C. § 371, "the government must prove the following elements beyond a reasonable doubt: (1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." *United States* v. *Wardell*, 591 F.3d 1279, 1287 (10th Cir. 2009) (quoting *United States* v. *Rogers*, 556 F.3d 1130, 1138 (10th Cir. 2009)). Mr. Busch focuses his sufficiency challenge on two elements: specific intent to commit the predicate offense and interdependence. We consider each argument.

Mr. Busch insists the government's evidence on specific intent was lacking. He claims it showed only he and his coconspirators set out to "jack" a dirt bike and "talk shit" to Mr. Swenson, which does not establish the "level of commitment necessary to achieve such horrid consequences" (here, the death of Swenson). Opening Br. at 49. The record proves otherwise.

"[A] conviction for conspiracy requires the defendant to possess at least the degree of criminal intent necessary for the substantive offense that the parties are conspiring to commit." *Wardell*, 591 F.3d at 1287. Mr. Busch

---

as to both elements Mr. Busch challenges on appeal, we need not address whether his sufficiency challenge to one element in the motion for a judgment of acquittal could preserve his sufficiency challenge to another element of the same offense, or whether the government waived the waiver by failing to assert it.

possessed the requisite intent for carjacking, so this necessarily establishes he also possessed the requisite intent for conspiracy to commit carjacking. *See id.* We thus reject Mr. Busch's argument that the evidence was insufficient on the intent element of § 371.

As to the interdependence element, Mr. Busch maintains "[t]he government never proved how the other three friends stood to benefit by helping [Mr. Busch] take a dirt bike from [Swenson's] property, much less how they planned to benefit by killing their friend, Swenson." Opening Br. at 50. This argument misunderstands the law.

The interdependence prong considers "if the activities of a defendant charged with conspiracy facilitated the endeavors of other alleged coconspirators or facilitated the venture as a whole." *Id.* at 1291 (quoting *United States* v. *Horn*, 946 F.2d 738, 740–41 (10th Cir. 1991)). Interdependence requires "proof that the conspirators intended to act *together* for their *shared mutual benefit* within the scope of the conspiracy charged." *United States* v. *Hamilton*, 587 F.3d 1199, 1208 (10th Cir. 2009) (quoting *United States* v. *Heckard*, 238 F.3d 1222, 1231 (10th Cir. 2001) (emphasis in original)). The "shared mutual benefit" need not be material or personal to each actor; it requires only evidence that a defendant's "activities facilitated the endeavors of *another alleged coconspirator or*

26

*facilitated the venture as a whole.*" *Id.* at 1209 (quoting *United States* v. *Ailsworth*, 138 F.3d 843, 851 (10th Cir. 1998)).

Interdependence does not require proof that the coconspirators made prudent or pragmatic decisions for their own independent benefit, as Mr. Busch suggests. Rather, the evidence must show each coconspirator acted for a "shared mutual benefit *within the scope of the conspiracy charged*" and the activities of each "facilitated the endeavor as a whole." *Hamilton*, 587 F.3d at 1208 (emphasis in original). *Hamilton* is instructive. There, the evidence of interdependence was sufficient beyond a reasonable doubt— even though Mr. Hamilton was not a member of the drug business and so did not benefit directly—because his conduct, procuring payment for one supplier, facilitated the overall venture. *See id.* at 1209.

So too here. The evidence shows Mr. Busch, Barnes, Hedgecock, and Terrell each facilitated the objective of the conspiracy. For example, as the government persuasively details, Mr. Busch "came up with the plan, asked his friends to participate, selected the motorcycle to be stolen, and pushed it off the property when it failed to start." Answer Br. at 28. Reviewing *de novo*, the evidence amply supports the government's view of the record.[21]

---

[21] The record shows Hedgecock drove the group to and from Swenson's house and used her handgun to deter Swenson from intervening, RIII.1224–25, RIII.1237–38; Barnes pointed his gun at Swenson, watching his front door while Busch tried to start the dirt bike, RIII.1227–28, RIII.1234–35;

Because the record reflects each co-defendant's activities "facilitated the venture as a whole," there was sufficient evidence of interdependence to support the conspiracy conviction. *Id.* at 1211 (quoting *Ailsworth*, 138 F.3d at 851). We thus affirm Mr. Busch's conviction under § 371.

## VI

Mr. Busch next contends the evidence was insufficient to prove beyond a reasonable doubt he carried a firearm—an element of his convictions under 18 U.S.C. §§ 924(c) and 922(g)—and that the firearm or ammunition traveled in interstate commerce—an element of his conviction under § 922(g).[22] We review Mr. Busch's argument *de novo* under our familiar standard, "viewing the evidence in the light most favorable to the prosecution" and asking if "*any* rational trier of fact could have found [that element] of the crime beyond a reasonable doubt." *Workman*, 577 F.3d at 1183.

---

and Barnes and Terrell helped load the dirt bike into the truck bed, RIII.1246.

[22] 18 U.S.C. § 924(c)(1)(A) prohibits any person from "us[ing] or carr[ying] a firearm" "during and in relation to any crime of violence" and provides additional penalties if the person brandishes the firearm. 18 U.S.C. § 922(g)(1) makes it "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition . . . which has been shipped or transported in interstate or foreign commerce."

**A**

Mr. Busch first emphasizes—correctly—no gun was ever recovered. But that alone is not dispositive of the sufficiency issue. A jury could still find beyond a reasonable doubt—based on other evidence presented by the prosecution—Mr. Busch carried a firearm during the offense. *See Desert Palace, Inc.* v. *Costa*, 539 U.S. 90, 100 (2003). In *Desert Palace*, the Supreme Court emphasized it has "never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required." *Id*. The Court added "juries are routinely instructed that the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence." *Id*. (alteration adopted) (internal quotations omitted). Accordingly, we consider both the direct and circumstantial evidence here in deciding whether there was sufficient evidence supporting Mr. Busch's firearms convictions; we do not require any particular piece or variety of evidence.

Mr. Busch further contends the surveillance camera footage from Swenson's security system did not establish beyond a reasonable doubt that he possessed, *see* § 922(g), or carried, *see* § 924(c), a firearm. According to Mr. Busch, the video showed "for no more than a second, a black speck at [Mr. Busch's] back near his waist band," and later showed "another black speck in his outstretched arm." Opening Br. at 60. Mr. Busch argues this

29

footage is insufficient because testimony from a witness is necessary to convict under the statute. In support, he relies on out-of-circuit precedents where eyewitness testimony established sufficient evidence of firearm possession. *See* Opening Br. at 61–62. We are not persuaded. The authorities cited by Mr. Busch show only that testimony may be *sufficient* to prove firearm possession, not that, as Mr. Busch mistakenly suggests, such testimony is *necessary* to prove the element beyond a reasonable doubt.[23] And our independent review of the surveillance video supports affirmance. The video shows

---

[23] According to Mr. Busch, "[m]ost federal cases set a very low bar for proving whether a person possessed a firearm," but he insists "all expect at least a live witness to describe some characteristics of a real firearm." Opening Br. at 61–62 (citing *United States* v. *Jones*, 16 F.3d 487, 491 (2nd Cir. 1994) (testimony from bank employees about a "silver gun with a white handle" sufficient to support a § 924(c) conviction); *United States* v. *Cruz-Diaz*, 550 F.3d 169, 173 (1st Cir. 2008) (testimony from bank employees about a "silver, shiny, nickel-plated pistol" sufficient to support a § 924(c) conviction); *United States* v. *Castillo*, 924 F.2d 1227, 1229 (2nd Cir. 1991) (testimony from a witness about a "dark revolver" sufficient to support a § 924(c) conviction)).

These cases give us no reason to doubt that properly admitted video footage is a sufficient basis for the jury's fact-finding. *See*, *e.g.*, *United States* v. *Kamahele*, 748 F.3d 984, 1010 (10th Cir. 2014) (affirming a conviction under § 924(c) based on surveillance video, the discovery of a matching gun, testimony by an accomplice that "the plan had called for [defendant] to carry a gun" and that defendant "had carried a sawed-off shotgun on the night of the robbery," and testimony by a victim that the defendant had "showed her a gun"); *see also United States* v. *Bell*, 290 F. App'x 178, 181 (10th Cir. 2008) (affirming a conviction under § 924(c) because "the surveillance video

- Mr. Busch held in his hand a black object about the size of a firearm, Supp. R. at 15 (12:45:28);

- Before he held the object in his hand, Mr. Busch carried the object in a place on his body typical of carrying firearms (his waistband), Supp. R. at 13 (12:45:25, 12:45:27);

- Mr. Busch took out the object and pointed it at Swenson when Swenson came outside with a gun (rather than, for example, seeking cover or running away), Supp. R. at 14–15 (12:45:27–28);

- Mr. Busch gave orders to Swenson while pointing that black object at him, RIII.1238; and

- Hedgecock testified that she, Mr. Busch, and Barnes carried firearms that night and pointed their guns at Swenson when he came outside, RIII.1236–38.

Still, Mr. Busch insists the object shown in the surveillance footage could "just as easily have been a wrench or other tool used to work on the dirt bike." Reply Br. at 30. We disagree. Our review is limited to whether *any* rational trier of fact could have determined the object was a gun—not whether there is a potentially reasonable alternative interpretation of the evidence. *See United States* v. *Hooks*, 780 F.2d 1526, 1530 (10th Cir. 1986) (noting the Supreme Court "flatly rejected" the idea "that a criminal conviction cannot be sustained if a reasonable hypothesis could be designed which is consistent with innocence"); *see also Jackson*, 443 U.S. at 326 (declining to adopt a theory that "the prosecution was under an affirmative

clearly show[ed] the robber carrying a firearm" and "[m]oreover, two eyewitnesses testified that they saw the robber with a firearm").

31

duty to rule out every hypothesis except that of guilt beyond a reasonable doubt"). And Mr. Busch's position defies common sense on this record. The surveillance video shows Mr. Busch, Barnes, and Hedgecock all in similar postures, pointing objects of similar sizes and shapes at Swenson while shouting at him to go inside. It is undisputed Barnes and Hedgecock held guns.

Accordingly, we conclude a rational juror could have found the government met the firearm-possession element of § 922(g) and firearm-use element of § 924(c) beyond a reasonable doubt. *See Workman*, 577 F.3d at 1183.

**B**

Mr. Busch also argues there was insufficient evidence the firearm traveled in interstate commerce. Opening Br. at 60. This argument is appropriately reviewed at most for plain error. Recall, when a defendant moves for a judgment of acquittal under Rule 29 "on specific grounds, all grounds not specified in the motion are waived." *Kimler*, 335 F.3d at 1141 (quoting *United States* v. *Chance*, 306 F.3d 356, 369 (6th Cir. 2002)). When Mr. Busch's counsel moved in the district court for a judgment of acquittal on the firearms charges, he focused only on the possession element and did not challenge the interstate-nexus evidence. RIII.1372–73 (counsel disputing whether "what [Mr. Busch] was actually possessing at that time

32

was, in fact, a firearm," but not addressing the interstate nexus). But review under the plain error standard and review of sufficiency of the evidence for a conviction "usually amount to largely the same exercise." *United States* v. *Wyatt*, 964 F.3d 947, 952 (10th Cir. 2020) (explaining "[a] conviction in the absence of sufficient evidence of guilt" almost always meets the four factors of plain error—an error, that is plain, affected the defendant's substantial rights, and seriously affects the fairness or integrity of the proceedings (quoting *United States* v. *Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013))). No matter which standard is applied, Mr. Busch cannot prevail on appeal.

The government needed to prove Mr. Busch "possess[ed] in or affecting commerce, any firearm *or* ammunition . . . which ha[d] been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1) (emphasis added). And there was sufficient evidence as to both the firearm and the ammunition to permit "*any* rational trier of fact [to] have found [the interstate commerce] element[] of the crime beyond a reasonable doubt." *See Workman*, 577 F.3d at 1183.

First, the government presented expert testimony that New Mexico's 187 licensed firearm manufacturers could not sell a firearm to someone (like Mr. Busch) with a prior felony conviction. *See* RIII.1354–56. This testimony could have permitted a jury to find Mr. Busch's firearm was manufactured out-of-state.

33

Second, there was even more evidence on the interstate nexus element for the ammunition. The statutory definition of ammunition includes "primers" and "propellent powder." *See* 18 U.S.C. § 921(a)(17)(A). The government's expert testified that certain primers and powder are not manufactured in New Mexico. RIII.1357–58. This testimony could have permitted a jury to find the ammunition in Mr. Busch's firearm had traveled in interstate commerce.

Because the surveillance footage and expert testimony provided sufficient evidence that Mr. Busch carried a firearm and that the firearm or ammunition had traveled in interstate commerce, we affirm his convictions under §§ 924(c) and 922(g).

## VII

We turn next to Mr. Busch's appellate challenges to the jury instructions. Mr. Busch claims the district court incorrectly instructed the jury on the elements of carjacking under § 2119(3). He also claims the district court erroneously deprived him of a jury instruction on self-defense to the carjacking charge. We consider each argument and conclude neither is properly before us on this record.

## A

Mr. Busch first contends the death-results element of § 2119(3) should have been placed in a separate interrogatory and failing to do so is

reversible error. *See* Opening Br. at 54–55.[24] Mr. Busch did not make this argument in the district court. Instead, he urged the district court to *adopt* the very formulation he now challenges. Under these circumstances, the invited-error doctrine typically bars appellate review. *See United States* v. *Deberry*, 430 F.3d 1294, 1302 (10th Cir. 2005) ("[T]he invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt.").

Mr. Busch insists the argument is preserved. He claims "[a]ppellant, and all the other codefendants, emphatically objected to the court's proposed instruction" and asked to separate the death-results element into another instruction and interrogatory. Opening Br. at 53–54. As relevant to preservation, Mr. Busch's position is disingenuous. From what Mr. Busch tells us in his appellate briefing, it would seem defense counsel opposed the instruction in the district court (thus suggesting the argument advanced on appeal is preserved). But a review of the transcript confirms it was the *prosecutor* who objected to the proposed language. The court asked, "So

---

[24] At oral argument, defense counsel also seemed to suggest the death-results element should not have been included *at all*. *See* Oral Arg. 12:45-13:12 (Mr. Busch's counsel maintaining that the government asked the district court to include the death-results element in a separate instruction, while the defense asked to omit it altogether). Mr. Busch has not previously taken this position—neither on appeal nor in the district court. "[I]ssues may not be raised for the first time at oral argument." *United States* v. *Malone*, 10 F.4th 1120, 1124–25 (10th Cir. 2021).

what you're asking -- Are you asking me to remove the fifth element from the current draft of Number 7?" RIII.1530. The prosecutor responded, "That would be the objection, Your Honor. And make it its own, like, a separate page, like a special interrogatory." RIII.1530.

Mr. Busch's counsel opposed the government's position and argued in favor of the instruction the court ultimately gave (which is now challenged on appeal). "I would object to doing that," counsel for a co-defendant said, in response to the government's proposal to separate the death-results instruction into its own interrogatory. RIII.1532. "I think it's totally proper the way the Court's done it."[25] RIII.1532. Mr. Busch's counsel then specifically joined in that objection "on behalf of Mr. Busch," asking the court not to separate the death-results instruction into its own interrogatory. RIII.1532.

We do not reach the merits of this legal challenge because Mr. Busch's arguments are foreclosed by the invited-error doctrine.

---

[25] We are compelled to remind counsel of their duty of candor as officers of the court. *See Hollingsworth* v. *Perry*, 570 U.S. 693, 722 (2013) (Kennedy J., dissenting) (recognizing that "litigants and counsel who appear before a federal court[] are subject to duties of candor, decorum, and respect for the tribunal and co-parties alike"); *see also Roosevelt-Hennix* v. *Prickett*, 717 F.3d 751, 758 n.11 (10th Cir. 2013) (emphasizing that "[f]actual contentions made on appeal should be supported in the record" and reminding counsel "of the duty of candor to the court" when counsel had "failed to meet these important obligations").

**B**

Mr. Busch also claims the district court erroneously refused to give a self-defense instruction on the carjacking count.[26] Opening Br. at 55–56. According to Mr. Busch, the district court should have "explained to the jurors" that if the co-defendants "did not have the intent to cause death or serious bodily injury should a crime have been committed in Appellant's taking of the dirt bike . . . self-defense to the increasingly violent action of [Swenson], first pointing [his] gun and then firing the gun, was appropriate." Opening Br. at 55–56.

"We review the district court's decision to give a particular jury instruction for abuse of discretion; however, we review the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." *United States* v. *Toledo*, 739 F.3d 562, 567 (10th Cir. 2014). "Specifically, a defendant is entitled to an instruction on any

---

[26] There is no dispute the district court refused to give the self-defense instruction on the carjacking count. But it is not entirely clear in the record whether the district court made an affirmative ruling on the issue. The parties have not identified the ruling nor did we locate it ourselves. We understand, however, the court functionally denied a self-defense instruction on count two by ruling it would permit a self-defense instruction only on count five, which charged Mr. Barnes with murder. *See* RIII.1551 (the court noting, "I included [a self-defense instruction] just as to Count 5").

recognized defense for which there is evidence sufficient for a reasonable jury to find in his favor." *Id*.

But "[g]enerally, a federal appellate court does not consider an issue not passed upon below." *United States* v. *Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) (quoting *Singleton* v. *Wulff*, 428 U.S. 106, 120 (1976)); *see also id*. (noting if an appellant fails to "cite the precise references in the record where the issue was raised and ruled on in the district court" then "we may assume the appellant did not preserve the issue for appeal and refuse to review the alleged error" (quoting *Harolds Stores, Inc.* v. *Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1540 n.3 (10th Cir. 1996))). When an argument is forfeited in the district court, the issue on appeal is then subject to plain-error review. *See Zander*, 794 F.3d at 1232 n.5. But "[w]hen an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise." *Leffler*, 942 F.3d at 1196.

On the record before us, we fail to see how Mr. Busch preserved in the district court his appellate argument on the self-defense instruction. Mr. Busch asserts on appeal "[he] and his co-defendants . . . argued that a self-defense instruction should have been allowed for the carjacking count two." Opening Br. at 55 (citing RIII.1547). But that portion of the record

38

reveals only the defense attorneys discussing various other jury instructions unrelated to self-defense and answering "no objection" as to each. We have also reviewed the record independently and failed to find where Mr. Busch preserved this issue.[27]

Perhaps Mr. Busch seeks to establish preservation through the advocacy of codefendant Barnes. But even if Barnes preserved the issue, "an objection by one defendant is not sufficient to preserve the issue for appeal for another defendant, at least when . . . there is no agreement among the defendants that an objection by one defendant will count as an objection by all defendants." *United States* v. *Zapata*, 546 F.3d 1179, 1190 (10th Cir. 2008); *see also United States* v. *Brown*, 654 F. App'x 896, 905 (10th Cir. 2016) (relying on *Zapata* to find a challenge to certain expert testimony was not properly preserved when the record revealed "only objections made by [a codefendant], and seemingly not joined by Brown").[28] Mr. Busch makes no affirmative argument on appeal that Barnes' advocacy has preserved the issue on his behalf.

---

[27] For example, Mr. Busch's counsel filed a brief opposing the government's motion *in limine*, which in part asked the court to preclude a self-defense instruction, without addressing that request or arguing a self-defense instruction was warranted. *See* RI.232.

[28] This unpublished authority is not binding on the panel, but we find it persuasive. *See* 10th Cir. R. 32.1.

We acknowledge the government did not challenge preservation and addressed the issue on the merits. It seems the government has waived the waiver. *See Dine Citizens Against Ruining Our Env't* v. *Haaland*, 59 F.4th 1016, 1038 n.9 (10th Cir. 2023) (reasoning appellee "did not argue that the argument was waived in its response brief, so the waiver has been waived"). Still, we retain a measure of discretion over "what questions may be taken up and resolved for the first time on appeal." *Singleton*, 428 U.S. at 121. For example, we may "determine an issue raised for the first time on appeal if it is a pure matter of law and its proper resolution is certain." *First W. Cap. Mgmt. Co.* v. *Malamed*, 874 F.3d 1136, 1144 (10th Cir. 2017) (quoting *Cox* v. *Glanz*, 800 F.3d 1231, 1246 n.7 (10th Cir. 2015)). Here, the "proper resolution" of the legal question is uncertain.[29] And the record—which suggests the issue was not raised by Mr. Busch or ruled upon with him in

---

[29] For example, the government argues self-defense does not apply to the death-results element of the carjacking statute. Answer Br. at 36–38. The death-results element of the carjacking statute has been characterized in *dicta* as a "strict-liability element." *See United States* v. *Moya*, 5 F.4th 1168, 1181 (10th Cir. 2021) (reasoning that the death-results element of a drug distribution statute was a strict liability element and citing the interpretation in *United States* v. *Lowell*, 2 F.4th 1291, 1293–95 (10th Cir. 2021), of the death-results element in the federal carjacking statute as a similar strict liability element). We cannot say *Moya* compels the conclusion the government advances. *Moya* concerns whether the government needed to prove a particular mental state attached to the death-results element; it did not address the availability of affirmative defenses. In any event, that issue is pending in co-defendant Barnes's appeal. *See* No. 22-2147.

40

mind—does not permit meaningful appellate inquiry into the parameters of the district court's ruling.

On the record before us, we adhere to the general rule that "[n]ormally when a party presents a new argument on appeal and fails to request plain error review, we do not address it." *Id.* (quoting *Margheim* v. *Bulijko*, 855 F.3d 1077, 1088 (10th Cir. 2017)). We therefore do not consider further whether the district court erred in formulating the death-results element as part of the carjacking instruction and in failing to give a self-defense instruction to the carjacking charge.

## VIII

Mr. Busch next argues the district court abused its discretion in excluding his toxicology expert. Opening Br. at 56. Evidentiary rulings "generally are committed to the very broad discretion of the trial judge, and they may constitute an abuse of discretion only if based on an erroneous conclusion of law, a clearly erroneous finding of fact or a manifest error in judgment." *Webb* v. *ABF Freight Sys., Inc.*, 155 F.3d 1230, 1246 (10th Cir. 1998). According to Mr. Busch, the defense expert would have testified that the concentration of methamphetamine in Swenson's blood could have caused Swenson to have symptoms of "paranoia" and "confusion" that evening. Opening Br. at 57. On appeal, Mr. Busch asserts he planned to argue the "level of methamphetamine in [Swenson's] system" affected "whether he would act in

41

an unreasonable manner." RIII.2142. But there is a fundamental problem with Mr. Busch's appellate position. He never attempted to introduce a toxicology expert.

Recall, at the pretrial conference, Mr. Busch's trial counsel mentioned for the first time that the defense sought to introduce a toxicology expert. RIII.2142. The deadline for designation of expert witnesses had passed, but the district court was willing to "reconsider a deadline if there's good cause, if [Mr. Busch] [did] have an expert," since there was "some time before trial." RIII.2142. Ultimately, the district court decided it would "leave [it] up to [Mr. Busch]" whether to proffer an expert, as long as he could "show good cause for this late notice." RIII.2142. Mr. Busch never proposed a toxicology expert, and he proceeded to trial without presenting testimony or evidence.

Because Mr. Busch never proposed an expert, there is no ruling by the district court on the admission or exclusion of a toxicology expert. *See Leffler*, 942 F.3d at 1196 (a proper appeal must identify where in the record "the issue was raised and ruled on in the district court"). The error alleged on appeal— the erroneous exclusion of the defense toxicology expert—simply did not occur.

## IX

Mr. Busch's final challenge on appeal is to the procedural reasonableness of his sentence. Procedural reasonableness "focuses on the manner in which the sentence was calculated." *United States* v. *Sanchez-*

*Leon*, 764 F.3d 1248, 1261 (10th Cir. 2014) (quoting *United States* v. *Masek*, 588 F.3d 1283, 1290 (10th Cir. 2009)) (internal quotations omitted); *see also Gall* v. *United States*, 552 U.S. 38, 51 (2007) (noting that procedural sentencing error includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence").

Mr. Busch contends the district court erroneously applied the obstruction-of-justice enhancement under U.S.S.G. § 3C1.1 to increase his base offense level. Mr. Busch objected to the enhancement in district court, so we review for an abuse of discretion. *See United States* v. *Garcia*, 946 F.3d 1191, 1211 (10th Cir. 2020). "A district court by definition abuses its discretion when it makes an error of law." *Koon* v. *United States*, 518 U.S. 81, 100 (1996). But we need not conclusively resolve whether the district court erred. We agree with the government that any error in the application of the obstruction enhancement was harmless on this record.

## A

The Presentence Investigation Report (PSR) calculated Mr. Busch's advisory Guidelines range based on a total offense level of 43 and criminal history category of V. Supp. RII. 26, ¶ 82. The PSR also recommended an enhancement for obstruction of justice under U.S.S.G. § 3C1.1, which

43

provides for an increase of two in a defendant's offense level if he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." Supp. RII.10, ¶ 32. Mr. Busch objected to the application of the obstruction enhancement. Supp. RIII.6. He emphasized he "did not resist his arrest, and did not threaten the safety of any law enforcement officers at the scene of his arrest." Supp. RIII.6.

At sentencing, the district court found the "firearm [Mr. Busch carried during the offense] was never recovered by law enforcement" and "Mr. Busch evaded capture immediately and in the days after the shooting despite being aware that law enforcement was looking for him." RIII.1822. Based on those findings, the district court concluded Mr. Busch had obstructed or impeded the administration of justice for purposes of § 3C1.1 by "destroying or concealing . . . evidence that [wa]s material to an official investigation" and engaging in "conduct . . . calculated . . . to thwart the investigation." RIII.1822–24. The two-level enhancement under § 3C1.1 increased Mr. Busch's total offense level from 43 to 45. But 43 is the maximum offense level recognized by the Guidelines, as "an offense level of more than 43 is to be treated as an offense level of 43. U.S.S.G. Ch. 5, Part A, cmt. n.2.

44

The district court then considered "whether the guidelines counsel[ed] any departures." RIII.1825.[30] The court noted the advisory guideline for robbery, U.S.S.G. § 2B3.1(c)(1), cross references § 2A1.1. *See* § 2B3.1(c)(1) ("If a victim was killed under circumstances that would constitute murder . . . , apply § 2A1.1 (First Degree Murder)."). In turn, U.S.S.G. § 2A1.1, cmt. n.2(B) provides in a sentencing for first-degree murder, "[i]f the defendant did not cause the death intentionally or knowingly, a downward departure may be warranted."

"[A]lthough [Mr. Busch] . . . was a chief instigator of the conspiracy," the district court found, "he was not the shooter and was not in the immediate vicinity where the shots were fired." RIII.1826. Mr. Busch did not "commence the carjacking with the purpose of killing the victim," the district court reasoned. RIII.1826. The district court determined there was a "sufficient basis to depart to offense level 38"—the base offense level for second-degree murder. RIII.1827. This made the advisory Guidelines range

---

[30] Departures are sentences outside of the advisory Guidelines range authorized by specific policy statements. *See* U.S.S.G. Ch. 1, Pt. A Subpt. (1)(4)(b). The Guidelines provide "[w]hen a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." U.S.S.G. Ch. 1, Pt. A, Subpt. (1). Here, the record does not reveal whether the court raised the possibility of a departure at Mr. Busch's request or *sua sponte*, although the court noted "a departure [wa]s wholly within [its] discretion." RIII.1825.

360 months to life. RIII.1827. The district court ultimately imposed a sentence of 480-months imprisonment.[31] RI.785–87.

## B

Mr. Busch urges a remand for resentencing. He claims the district court impermissibly based the obstruction enhancement on his attempt to evade arrest. In support, Mr. Busch points to U.S.S.G. § 3C1.1, which identifies "avoiding or fleeing from arrest" as an example of "conduct [that] ordinarily do[es] not warrant application of this adjustment." U.S.S.G. § 3C1.1 cmt. n.5(D); *see also Stinson* v. *United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). Faced with the language of the Commentary, the government does not meaningfully dispute the district court erred. Rather, the government contends any error is harmless. On the unique facts of this case, we agree.

---

[31] Mr. Busch was sentenced to concurrent prison terms of 60 months on Count 1, 396 months on Count 2, and 120 months on Count 7, and a consecutive term of 84 months on Count 4, for a total of 480 months. RI.785–87.

**1**

When a defendant "meets the initial burden of showing that the district court erred" in calculating an advisory sentencing range, "resentencing is required only if the error was not harmless." *United States* v. *Eddington*, 65 F.4th 1231, 1243 (10th Cir. 2023) (quoting *Sanchez-Leon*, 764 F.3d at 1262). In the sentencing context, "[h]armlessness must be proven by a preponderance of the evidence," and "the beneficiary of the error"—here, the government—bears the burden of proof. *Id.* (quoting *Sanchez-Leon*, 764 F.3d at 1262). In this context, "an error is harmless if it 'did not affect the district court's selection of the sentence imposed.'" *United States* v. *Keck*, 643 F.3d 789, 798 (10th Cir. 2011) (quoting *United States* v. *Labastida-Segura*, 396 F.3d 1140, 1143 (10th Cir. 2005)).

The government urges affirmance under *United States* v. *Keck*. That case concerned a procedural reasonableness challenge to the defendant's sentence for a drug conspiracy conviction. *Id.* at 797. There, we found the district court erred by applying sentencing enhancements based on an incorrect drug quantity. *Id.* The erroneous enhancement increased the defendant's base offense level from 46 to 48. *Id.* at 801. Still, we concluded the error could be deemed harmless for two reasons. *See id.* First, "the sentencing error did not affect . . . the advisory sentence," since the Guidelines provided that any offense level above 43 would be treated as an

offense level of 43. *See id.* ("According to the sentencing table, an offense level of 43 or above results in an advisory sentence of life imprisonment."). Second, the error did not affect "the district court's reasoning in imposing a life sentence," since the district court had identified on the record reasons unrelated to drug quantity—such as deterrence—to justify the sentence imposed. *Id.* at 802.

**2**

We agree with the government that, on this record, affirmance is appropriate under *Keck*. Here, as in *Keck*, the advisory Guidelines range was unaffected by the alleged error because the base offense level was at or above the maximum recognized offense level. *See id.* at 801. As calculated, Mr. Busch's offense level was 43 (without the obstruction enhancement) or 45 (with the enhancement). Because, as the district court correctly observed, "the sentencing guidelines max out at offense level 43," both carry the same advisory Guidelines sentence—life imprisonment. RIII.1825.

Then, the district court specifically departed downward to offense level 38, because it found "Mr. Busch did not commence the carjacking with the purpose of killing of the victim" but rather that "his actions were, at best, extremely reckless and negligent." RIII.1826. The district court found it appropriate, "based on this conduct," to depart specifically to the offense level for second-degree murder. RIII.1826–27.

48

And the district court's reasoning at sentencing seems to have been unaffected by the error. In *Keck*, no facts relating to the erroneous adjustment for drug quantity featured in the district court's rationale at sentencing. *See id*. at 802 (observing "the district court indicated it relied on . . . (1) the severity of the offense; (2) the necessity to protect the community and to deter future drug conspiracies; and (3) the lack of circumstances justifying a variance" rather than on any facts associated with the upward adjustment). Similarly, here, the district court did not rely on facts relating to the obstruction of justice enhancement in selecting the ultimate sentence imposed of 480-months imprisonment.

Even assuming the district court improperly applied the enhancement under § 3C1.1, Mr. Busch's procedural reasonableness challenge is unavailing on this record. The government has shown that any error was harmless because it did not affect the district court's selection of Mr. Busch's sentence.

**XI**

We AFFIRM Mr. Busch's conviction and sentence.

ENTERED FOR THE COURT

Veronica S. Rossman
Circuit Judge

49